**People of the State of Illinois, Defendant in Error, v. Neal Cohoon, Plaintiff in Error.**

Heard in this court at the May term, 1942. Opinion filed June 27, 1942.

WILL P. WELKER, of Vandalia, for plaintiff in error.

ROBERT G. BURNSIDE, State's Attorney, and J. RICH-
ARD ROYAL, Assistant State's Attorney, for defendant
in error.

MR. PRESIDING JUSTICE STONE delivered the opinion
of the court.

Neal Cohoon, plaintiff in error, who will hereinafter
be referred to as defendant was arrested on an in-
formation verified by the sheriff of Fayette county,
charging him with false imprisonment, to which in-
formation he pleaded not guilty. Thereafter an
amended information was filed again verified by the
sheriff upon which there was no arraignment and no
plea interposed. Upon trial by a jury, defendant was
found guilty, and sentenced to a term of one year at
the Vandalia State Farm.

The record discloses that the defendant was a river
bottom farmer, aged 62 years, who lived a few miles
from Vandalia, Illinois, in a shack or cabin, with his
21 year old wife, Rosa and their baby, who was a few
months old. Prior to October 18, 1941, the wife had
told defendant of her indiscretions with other men,
and that one of these men has asked her to go east
some place, where she would be maintained. On Octo-
ber 18, 1941, the wife suggested that defendant go to
Vandalia and get some provisions. Defendant replied
that if he went, she would run off while he was gone
and go with this man, who had suggested that she leave.
The wife protested that she would not and proposed
that if her husband did not believe her statement, that
he tie her up until his return. He said that he had
nothing to tie her up with except chains, and she said
that would be all right. He placed a chain about her
neck and fastened it to the bed. She then said that if
defendant thought that would not hold her to put a
chain around her leg, and when he said he would not
do that, she took the chain and put it around her leg.

According to the undisputed testimony, they both laughed about the situation, he kissed her and the baby, placed some water near her, locked the door and started to Vandalia.

While transacting some business in Vandalia, he was arrested by the sheriff on another charge. The wife, Rosa, was released, after about four hours, by the sheriff. She refused to complain against her husband, but the State's Attorney filed a complaint, verified by the sheriff, and the arrest and prosecution of defendant followed.

Counsel for defendant contend that the verdict in this case is not sustained by the evidence, and that the charges in the information have not been proved. The statute defines the offense charged as follows. "False imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." Ill. Rev. Stat. 1941, ch. 38, sec. 252 [Jones Ill. Stats. Ann. 37.201]. The amended information upon which defendant was tried, charged that he "did unlawfully and forcibly make an assault upon one Rosa Cohoon, and did then and there unlawfully, against the will, and without any warrant or sufficient legal authority, or any reasonable justifiable cause whatsoever, imprison, confine and detain said Rosa Cohoon for a space of four hours." The foundation of the false imprisonment is the assault charged. To the charge of assault, as a general rule if the prosecutor intelligently assented, this is a good defense. Wharton's Criminal Law, 11th ed., sec. 883. False imprisonment in its legal meaning is an aggravated assault. Bishop on Criminal Law, 9th ed., sec. 747. The gist of the offense of false imprisonment is the actual and unlawful restraint or detention of one person against his will by another, by actual force or reasonably apprehended force, though actual force is not necessary. 25 C. J. 571.

There is no evidence in this record of any force, restraint, confinement or detention, against the will of Rosa Cohoon, on the part of defendant. Defendant testified, "I said, 'If I go you'll run off.' She said, 'No, I won't. If you think I will, you can tie me up.' I said, 'I haven't got anything to tie you up with, but chains,' and she said, 'Well, you can put them on me.' I said, 'I don't see much need of doing that. You could stay without that,' and she said, 'No,' that she wouldn't want to stay unless I put the chains on her, and I said, 'I'll put one on your neck,' and she said, 'All right,' and I did, and she put the one on her ankle." Rosa Cohoon testified, "He says, 'While I'm gone you'll run off.' I said, 'No, I won't and if you're afraid I will, you can tie me up.' And he said he didn't have anything except chains, and I said he could chain me up, and I told him if he didn't think he could put a chain around my neck and I told him if he didn't think that would hold me he could put one around my leg, and he said, 'No,' he wouldn't do that. So I took it and put it around my leg myself." No one contradicts this testimony. Sheriff Cheshier testified on behalf of the People that he went to the Cohoon house at about 12 o'clock October 18th, and rattled the chain that came through the door. He does not testify to any outcry or call for help from Rosa Cohoon. Deputy Whitten, testified, also on behalf of the People that he accompanied the sheriff to the Cohoon home and heard a voice that he believed to be that of Rosa Cohoon, but he does not testify to any outcry on her part.

It is apparent from this undisputed testimony, that she just did not alone passively submit to this restraint of her liberty; nor just consented, but that it was her suggestion in the first place that she be tied up and assisted him in doing so. If defendant had locked her in the house, without her consent, technically, he would have been guilty of false imprisonment. The bizarre, mediaeval gesture of confining her with chains, is im-

portant only in determining the amount of punishment to be meted out to him, in the event the imprisonment was without her consent. It is a difference of degree and not of kind.

Counsel for the People contend that the testimony of the wife of defendant was so far fetched, as to make the element of her consent improbable, and that witnesses for the People testified to contradictory admissions which she made shortly after the alleged offense and before the trial. These admissions seem to be to the effect that she had intended to run away on October 18. If so, there is no evidence that she communicated that intention to her husband, the defendant. We do not, nor does any one apparently, know what her subtle, feminine mental reservations might have been at this time. In the light of her confessed indiscretions with other men, she may have been motivated by some queer obsession of self-martyrdom, in requesting that she be tied up. This court does not know as to that. But we do know that the record shows that she asked her husband to tie her up and that she actively assisted him in doing so. There is no evidence that he knew anything about any mental reservations that she might have had about running away. There is no evidence of any intimidation upon the part of defendant.

We are of the opinion that the evidence wholly fails to show that a crime was committed, and that the sentence of the lower court is void.

It is urged as error, that the court should have sustained a motion in arrest of judgment, for the reason that the trial proceeded upon an amended information, without arraignment and without a plea or a request for one. In view of our holding as above, it is unnecessary for us to consider this contention.

The judgment of the county court is reversed.

*Reversed.*