THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY LEONHARDT, Defendant-Appellant.

First District (3rd Division) No. 85—1610

Opinion filed July 27, 1988.

Randolph N. Stone, Public Defender, of Chicago (John Thomas Moran, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

In a bench trial, defendant, Gary Leonhardt, was found guilty of rape, deviate sexual assault, and unlawful restraint. He was sentenced to six years for rape, six years for deviate sexual assault and three years for unlawful restraint. The sentences are to be served concurrently in the Illinois Department of Corrections. Defendant contends that (1) the information charging him with rape was fatally deficient; (2) he was not proven guilty beyond a reasonable doubt; and (3) he was denied a right to present a defense. We affirm.

On August 13, 1983, the victim (Vic), was 26 years old. At about 7 p.m., Vic and her roommate were at a picnic in Schiller Woods, Cook County. Vic was dressed as a cocktail waitress because she was employed as such at a lounge and was due at work at 9 p.m. She intended to leave the picnic and go directly to work. While Vic was at the picnic, she met defendant, age 19, for the first time. Defendant agreed to drive Vic to work on his motorcycle. At about 8:15 p.m., Vic and defendant left the picnic on the motorcycle, with the intention of going to Vic's workplace. Defendant drove east on Irving Park Road and turned south on River Road. They stopped for gas at a gas station. Vic wanted to use the washroom, but it was out of order.

After they left the gas station, defendant and Vic began traveling on the motorcycle in the direction of Vic's workplace. Vic told defendant that she had to use the washroom and that she could not wait until she arrived at work. Defendant then turned off the roadway and proceeded onto a gravel bike path into the forest preserve. After defendant stopped, Vic went off the path and into the weeds, to a distance where neither she nor defendant could see each other. Vic then urinated. When Vic returned to the bike path, she saw defendant urinating in front of his motorcycle. Vic stated, "Okay, I am ready to go to work now." Defendant grabbed her arm tightly and told her that she was not going to work but was going to stay with him. Vic said that she wanted to go to work. Defendant started kissing her and trying to take off her shirt. Vic started crying and shaking, and she "kept telling him, just take me to work, that I

needed to go to work." Defendant told Vic that "he wanted to fuck," and that she "would like it." Defendant grabbed her arm and pulled her to the side of the path and tried to undo her clothes. Vic said that she would do whatever he wanted if he would just not hurt her. She untied her shirt and defendant grabbed her leotard and pulled it down to her waist. He grabbed her breasts and began squeezing them tightly. Vic kept begging him to just take her to work. Defendant pushed her onto the gravel, grabbed the back of her head, pushed her face toward his penis and put his penis into her mouth. Defendant then pushed her onto the gravel and ripped off her pantyhose. He then had sexual intercourse with Vic and eventually ejaculated on her stomach.

Vic told defendant that the gravel and rock were hurting her back. Defendant rolled over and put Vic on top of him. It then appeared that defendant fell asleep. Vic got up, grabbed her clothes and although she was half naked, she started to run toward the road. Defendant chased her and grabbed her neck and began choking her. He then hit her twice in the face and she almost passed out. Defendant then put Vic back on the motorcycle and drove into the woods. He stopped when he reached a grassy area with picnic tables. Vic was scared because she thought that he was going to dump her into the river. Defendant and Vic sat on a picnic table and defendant said that "he wanted to fuck her in the ass," and he proceeded to have anal intercourse with Vic. Afterwards, defendant had sexual intercourse with her.

Later, defendant put Vic back on the motorcycle and they rode to another picnic area where Vic began crying and shaking. Defendant then had sexual intercourse with Vic again. When defendant fell asleep, Vic ran out to the road and flagged down a police car. She told the two police officers that she had been raped and beaten. A police officer and Vic went to the picnic area where the last attack took place, and defendant was arrested. Vic was taken to a hospital where she was examined and her injuries were photographed. The record reflects that Vic had dark bruises on her breasts, substantial scratches on her back and buttocks, her left eye and left cheek were swollen and Vic had minor scrapes on her knees and feet. The police officers testified that when they first saw Vic, her clothes were soiled and disheveled, the left side of her face was swollen and she seemed nervous and upset.

Defendant first contends that the information charging him with rape is insufficient because (1) the evidence is that defendant and Vic had sexual intercourse three times on the same day but the informa-

tion does not specify time or place and (2) it does not protect him from double jeopardy. The information states that "on August 13, 1983, in Cook County, Illinois, Gary A. Leonhardt, a male person of the age of fourteen years and upwards committed the offense of rape in that he had sexual intercourse with [the victim], a female not the wife of said Gary A. Leonhardt, by force and against her will, in violation of Chapter 38, Section 11—1—A, Illinois Revised Statutes."

 █ Defendant did not claim that the information charging him with rape was insufficient during trial or in his post-trial motion. The State therefore contends that defendant waived any claim that the information charging him with rape was deficient. We reject the waiver argument. (*People v. Vaughn* (1985), 136 Ill. App. 3d 342, 483 N.E.2d 417.) However, when the sufficiency of a charging instrument is attacked for the first time on appeal, the charging instrument will be upheld as sufficient if it apprised the defendant of the offense charged with sufficient particularity to have enabled him to prepare his defense and to plead the resulting conviction as a bar to future prosecution. *People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437, 440; *People v. Johnson* (1979), 69 Ill. App. 3d 248, 250, 387 N.E.2d 388, 390.

██ Here, we believe it is clear that the information charging defendant with rape apprised him of the offense with sufficient particularity to have enabled him to prepare his defense. Initially, we observe that the information plainly establishes the date and county of the offense, nature and elements of the charge, and defendant's name. Moreover, the information is worded in the terms of the statute which sets forth the elements of the offense. Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a) (repealed by Pub. Act 83—1067, §28, eff. July 1, 1984 (now Ill. Rev. Stat. 1987, ch. 38, par. 12—13)).

In addition, during the pretrial course of the case, defendant filed a motion for discovery and requested a bill of particulars in which he requested the time and date of the occurrence, as well as the street address and physical description of the occurrence site. The State complied with the requests made in defendant's motion for discovery and answered the request for a bill of particulars by stating that the occurrence took place on August 13, 1983, at approximately 9 p.m. at or about Schiller Park Woods in Cook County.

Moreover, any doubt that could possibly have existed concerning the specifics of the rape charge and the events of August 13, 1983, was removed at a pretrial hearing in which Vic testified. During trial, defendant attempted to impeach Vic by using her testimony from the pretrial hearing. Defendant later testified on direct exami-

nation as to all the events that occurred with Vic on August 13, 1983. Also, the record reflects that defendant conducted a thorough cross-examination of all the State's witnesses at trial and no evidentiary surprises surfaced. Under the circumstances, we are firmly convinced that defendant was apprised of the offense with sufficient particularity to have enabled him to prepare his defense.

■ We next address defendant's claim that although he has been convicted of rape, he is not protected from double jeopardy as to the three sexual intercourse encounters he had with Vic on August 13, 1983. On this issue, the State admits that as a result of the conviction of rape in this case defendant cannot be charged with rape again for any of the three sexual intercourse encounters he had with Vic on August 13, 1983. In its brief, the State concedes:

> "The three occurrences of vaginal intercourse were not independent, overt acts but rather three offenses based on the same continuing act, even though minimally separate in time and place. *** The defendant has been tried for the three rapes of August 13, 1983. Since the defendant has been charged and tried for all the crimes occurring on August 13, 1983, Double Jeopardy cannot attach."

Under the circumstances, we hold that as a result of the affirmance of defendant's conviction of rape in this case, he may not be charged again with rape for any of the three sexual encounters he had with Vic on August 13, 1983, because double jeopardy would be applicable. We conclude that not only is the information charging defendant with rape sufficient to have enabled him to prepare his defense, but it is also sufficient to plead the resulting conviction as a bar to future prosecution. We therefore reject defendant's argument that the information charging him with rape is insufficient.

■ Defendant next contends that he was not proven guilty beyond a reasonable doubt because Vic consented to having sexual intercourse. He argues that "when they drove off from the picnic she reached inside his shorts and held his penis, arousing him." However, the alleged act to which defendant refers did not occur immediately before or in conjunction with the sexual attacks that took place later in the woods. Thus, the alleged act does not constitute or demonstrate consent to have sexual intercourse by force and against one's will. In addition, Vic denied defendant's accusation.

■ Defendant also emphasizes Vic's apparel to demonstrate that she consented to the attack. Defendant argues that the cocktail waitress outfit that she was wearing was "a suggestive costume." Defendant states that "at this moment she was wearing black nylon

pantyhose, a red sequined leotard that one had to put their [*sic*] legs through one at a time and pull up, a red shirt that buttoned and tied in the front, and red hot-pants." We flatly reject defendant's suggestion that a woman's apparel can constitute or demonstrate consent to being sexually attacked. Women must be free to wear whatever they wish without fear that later their apparel will be construed in a courtroom as consent to being sexually attacked.

■ Defendant next argues that "[Vic's] failure to resist or even object when it was within her power to do so, conveyed the impression of consent," and that she disrobed herself. Defendant states: "She told Gary only to: 'just not to hurt me, that I would do whatever he wanted.' She disrobed and defendant squeezed her breasts hard. *** She then took her shirt off and put it to the side and told Gary to: 'Just go ahead and do what you want to do just don't hurt me, and take me to work.' She said Gary Leonhardt then had intercourse with her and ejaculated on her stomach." We reject defendant's argument because physical resistance or demonstrative protestations are not necessary to demonstrate that a woman was forced to have sexual intercourse. Moreover, the absence of physical resistance or demonstrative protestations does not establish or demonstrate consent if the woman is threatened or in fear of being harmed. Defendant also argues that he thought Vic's repeated statements to him that she "wanted to go to work" meant that she wanted to engage in sex with him. This double entendre is plainly specious.

■ After one of the attacks, defendant and Vic saw a man scrounging in garbage cans that were in the area. According to Vic, the man "was far enough away where I couldn't make out his features or anything." Defendant told Vic to get dressed in a hurry and to be quiet and sit on the picnic table and act like lovers. He then put his arm around Vic so that her face was on his chest. The unidentified man then left the area. Defendant argues that because Vic did not make an outcry or try to escape when the man was in the area she consented to the attack. However, merely because a woman does not make an outcry to try to escape does not mean that she was not being forced to have sexual intercourse, nor does it mean that she consented to having sexual intercourse if she was threatened or in fear of being harmed. We find defendant's argument to be without merit.

■ Defendant next argues that the record shows that Vic consented because there is no evidence that she suffered any trauma to her sex organs or anus. However, medical evidence of physical injury

is not necessary to prove that an adult woman was forced to have sexual intercourse, and the lack of medical evidence of physical injury does not establish that she consented to have sexual intercourse.

■■ We believe that all of defendant's arguments relating to consent fail to recognize the plain but significant distinction between consent and provocation. While express or implied consent will negative a woman's claim that the sexual intercourse was by force and against her will, mere proof of provocation will not negative a woman's claim that the sexual intercourse was by force and against her will. Provocation is not tantamount to implied consent where force or threat of force is used to have sexual intercourse. Thus, mere provocation will not prevent or reverse a conviction of rape. Here, we believe that the facts and circumstances are sufficient for the trier of fact to believe beyond a reasonable doubt that Vic did not consent to have sexual intercourse with defendant and that defendant had sexual intercourse with Vic by force and against her will. ·

■■ Defendant next contends that the State did not prove Vic was not his wife and that therefore he could not be found guilty of rape. However, there is no dispute that defendant and Vic met for the first time at the picnic shortly before the motorcycle trip into the woods where the sexual attacks occurred. Under the circumstances, there is an inference that defendant and Vic were not married, and defendant's contention is without merit.

■■ Defendant also argues that he was not proven guilty of the offense of unlawful restraint because the only evidence of detention arose as a result of other, differently motivated criminal conduct. However, the offense of unlawful restraint is often committed in conjunction with other offenses but is punishable as a separate crime if the restraint is independent. (*People v. Kuykendall* (1982), 108 Ill. App. 3d 708, 710-11, 439 N.E.2d 521, 523.) Criminal unlawful restraint is committed when one knowingly and without legal authority detains another. The detention must be willful, against the victim's consent, and prevent movement from one place to another. (*People v. Satterthwaite* (1979), 72 Ill. App. 3d 483, 485, 391 N.E.2d 162, 164.) Here, we believe that the facts sufficiently establish beyond a reasonable doubt that Vic was unlawfully detained. The detention was willful and against her consent, and Vic was prevented from moving from one place to another. Defendant's contention is therefore untenable.

■■ Defendant's final assignment of error is that he was denied a right to present a defense because he was prevented from calling a witness, Daniel Jasch, to testify. Jasch is "a close friend" of defend-

ant. His name appeared on defendant's answer to one of the State's pretrial discovery motions. Prior to the commencement of trial, defendant had been informed that Jasch would be unable to appear in court on the day of trial until the afternoon. Defendant did not inform the court or ask for a continuance because of Jasch's inability to be in court earlier. After proofs were closed, the court took a short recess before closing arguments. The court again was not informed of Jasch's inability to appear in court. During closing arguments, Jasch appeared at the courthouse but he was prevented from entering the courtroom by a deputy sheriff because the courtroom doors were closed during closing arguments. The court was not told anything about Jasch until defendant filed his post-trial motion. In his post-trial motion, signed solely by his attorney, defendant stated that Jasch "would have testified that he saw [the victim] put her hand on the defendant's penis when they left on the motorcycle and that he had seen the defendant and [the victim] talking together earlier in the day of August 14, 1983." The court conducted a hearing on the post-trial motion and denied the motion.

We find no error committed by the trial court. A party cannot fail to advise the court until after proofs are closed that he has a remaining witness, and then charge the court with committing error for not allowing the witness to testify. In such a situation the court has a right to assume that the party voluntarily chose to proceed to judgment without the testimony of the witness that was not disclosed to the court. Moreover, in the present case the supposed testimony of the witness would only corroborate defendant's testimony on a noncritical fact. Additional evidence which merely corroborates testimony that was given on a noncritical fact is not a basis for granting a new trial.

Accordingly, the judgment is affirmed.

Affirmed.

WHITE, P.J., and FREEMAN, J., concur.