THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFF BOWEN, Defendant-Appellant.

Fourth District   No. 4—92—0206

Opinion filed February 18, 1993.

Gundlach, Lee, Eggmann, Boyle & Roessler (James E. DeFranco, of counsel), and Harriet H. Hamilton, of Cook, Shevlin, Keefe, Ysursa, Brauer & Bartholomew (Bruce N. Cook, of counsel), both of Belleville, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a bench trial, defendant was convicted of two counts of criminal sexual assault and one count of unlawful restraint. (Ill. Rev. Stat. 1991, ch. 38, pars. 12—13(a)(1), 10—3(a).) He was sentenced to four years' imprisonment for each count of criminal sexual assault, with the terms to run consecutively, and one year's imprisonment on the unlawful restraint charge to run concurrently. Defendant appeals

his conviction and sentence arguing (1) the statutory provisions defining "force" and "consent" (Ill. Rev. Stat. 1991, ch. 38, pars. 12—12(d), 12—17(a)) are unconstitutionally vague; (2) he was not proved guilty of criminal sexual assault beyond a reasonable doubt; (3) he is entitled to a new trial based on improper prosecutorial comments; (4) the trial court failed to consider all the evidence in determining his guilt; (5) he was denied effective assistance of counsel; (6) his conviction for unlawful restraint should be reversed because it is an included offense of criminal sexual assault or, in the alternative, because the State failed to prove its elements beyond a reasonable doubt; and (7) the imposition of consecutive sentences was unconstitutional. We affirm defendant's convictions and sentences for criminal sexual assault and vacate his conviction for unlawful restraint.

On September 19, 1991, defendant was indicted by a grand jury in Champaign County of two counts of criminal sexual assault and one count of unlawful restraint. (Ill. Rev. Stat. 1991, ch. 38, pars. 12—13(a)(1), 10—3(a).) Count I of the indictment alleged defendant committed sexual penetration by the use of force in that he placed his penis into the victim's vagina. Count II alleged defendant committed sexual penetration by the use of force in that he placed his fingers in the victim's vagina. Count III alleged defendant knowingly and without legal authority detained the victim by lying on top of her and refusing to allow her to rise. Defendant pleaded not guilty to the charges. He admitted having sexual intercourse with the victim but claimed it was consensual.

At the time of the alleged incident, the victim was a fourth-year student at the University of Illinois. She lived in an apartment in Champaign, Illinois, with Janice Hartmann, Becky Levi, Tracy Betts, and Nicci Mears. It was a two-floor apartment with two bedrooms on the bottom floor and two on the top floor. The victim and Becky occupied the upstairs bedrooms.

On the weekend of May 4 and 5, 1991, Janice's brother, Ron, and two of his friends, defendant and John Bethard, played golf in Champaign and were going to spend the night at the victim's apartment. Becky, Janice, the victim, and the three men went out that evening as a group to a couple of bars. Later that evening, the victim left the group and went home alone. After she arrived at her apartment, she watched television with her roommate, Tracy, for about 10 minutes and then went upstairs to bed. She wore a pair of khaki shorts and a white T-shirt to bed.

Becky, John, Janice, and the defendant returned to the apartment at approximately 2 or 2:30 a.m. The victim awoke when she heard

them come home and went downstairs to see how they were. The victim testified she spoke briefly to Becky and Janice, and while she was downstairs, defendant put his arms around her and she pushed him away and returned upstairs to her bedroom. Janice did not see this happen because she was in her bedroom, and defendant denied doing it. After changing clothes, Becky, Janice, and John went upstairs to Becky's room to go out on the roof.

The victim was awakened again when she heard someone at her door. It was defendant asking her if he could get to the roof from her bedroom. She responded he could, but she was sleeping and he should go through Becky's room. She heard the door close and thought he had left. She testified defendant had not left but rather got onto her bed and straddled her. His legs were on either side of her body, and his arms were at her shoulders. He attempted to kiss her, and she tried to get away by moving her head. He pulled down the comforter and lifted up her shirt. He kissed one of her breasts and her stomach. She tried to push him away, but she could not move him. During this time, she repeatedly said to him " 'What are you doing,' " and " 'Please get out of my room. Stop.' " She did not recall how loud she was saying this. He then went under her shorts and underwear and inserted his fingers into her vagina. She told him to " 'Stop. Please stop,' " and repeatedly told him "no." She continually tried to push his hand away and eventually did so.

He then pulled her shorts and underwear down and forced his penis inside her vagina. While doing this, he told her "[she] was so warm." She again told him "no," and " '[she] [did not] want this to happen. This shouldn't happen.' " She did not recall where his clothes were during this time or whether his clothes were on or just pulled away. She did state she did not assist him in taking his clothes off nor did she assist in taking her own shorts off. She also testified she did not scream because she could not believe what was happening, thought she could control the situation, and was scared.

She tried to push him away by the shoulder area, and when this was unsuccessful, she moved her hands down to his waist and tried to push. She was able to push his penis out of her. As she pushed him away, he told her to "jack him off." He pushed her over on her side so they were facing each other and moved his arms around her body and rubbed his penis against her legs. He kept telling her to come closer and not go away. Eventually, she was able to push herself off the bed. When she got out of bed, her shorts and underwear were off, but her shirt was still on.

She went to her chest of drawers and put on some clean underwear. After she put her clothes on, she told defendant to put his clothes on and leave. His clothes were on the floor next to the bed. He asked her to take all her clothes off because he wanted to see what she looked like. She picked up his clothes and threw them at him and told him to put them on and leave. He put them on, and while she was walking toward the door, he tried to kiss her again. He was holding her and pushed her back on the bed. While he was attempting to kiss her, Janice opened the bedroom door for a split second and then closed it.

Janice testified she went to the victim's bedroom to see if she wanted to come out. She stated when she opened the door she saw defendant "kind of standing kind of crouched" but could not see the victim clearly. When she saw defendant, she immediately closed the door. She testified neither person spoke to her. The victim stated she did not say anything to Janice because she did not have the opportunity and because they were already dressed. The door apparently startled defendant and she was able to get off the bed. The victim then opened the door and told defendant to leave.

Defendant left immediately and proceeded to go through Becky's room to sit on the roof. After defendant was on the roof, the victim came into Becky's room. She told Becky defendant had just attacked her. Becky testified the victim looked frightened, and her hands were shaking. The victim stated she was really nervous, and she did not believe Becky understood what she was saying. She returned to her room and called her boyfriend. She then called her next-door neighbors, Amy Glick and Mary Vehe, and went over to their apartment.

Amy testified when the victim arrived at her apartment she was crying and was hysterical. The victim tried to tell Amy about the incident but was crying and was unable to do so. Amy asked her if she had been raped, and the victim responded she had. While at Amy's apartment, the victim called her apartment. Becky answered the phone, and she testified the victim was crying and said: " 'Be careful. Be careful. Lock your door.' " Becky and Janice then went to Amy and Mary's apartment. Becky testified the victim was very upset and crying. Janice, Becky, Mary, and Amy took the victim to Carle Hospital at approximately 4 a.m.

At the hospital, Janice stayed with the victim until a nurse asked her to leave. Janice testified the victim was "disoriented but not *** really hysterical." Approximately two hours after she arrived at the hospital, the victim was examined by Dr. William Welch. Dr. Welch testified the victim told him she had been sexually assaulted, and her

vagina had been penetrated by a penis. She also told him this was nonconsensual sexual contact. He conducted a pelvic examination which revealed some mucus present within the vagina. The mucus did not contain any sperm. The doctor further stated he did not observe any signs of trauma, *i.e.*, cuts, bruises, bleeding in the pelvic area, but testified this lack of physical evidence was not inconsistent with her claim of being sexually assaulted.

On cross-examination, he asserted he asked the victim if she had screamed, and she responded " '[y]ou would have thought I would have.' " He described her demeanor as atypical of a sexual assault victim because she was not emotionally distraught. He also indicated he found no evidence of a struggle, nor did he find any bruises or red marks on her body indicating she had been held down. He further testified the hymenal ring was intact, nonperforated, but it was retracted enough so she could have been sexually active. On redirect, he stated the victim had not indicated to him there had been a struggle and asserted there would not always be signs of physical trauma in every sexual assault case.

The victim testified she did not report the incident to the officer who was present during her examination because she was scared and because Janice was in the room with her and Janice's brother was the defendant's friend. She reported the incident to the police 15 hours after the incident occurred.

Defendant offered another version of the alleged incident. He testified after returning to the apartment from the bars he went upstairs to go to the roof. There were two doors upstairs. One was open, and he looked in and saw John, Janice, and Becky. Because he did not see the victim and he wanted to know if she wanted to go out on the roof, he knocked on the other door. He opened the door and asked the victim what she was doing and why she did not come out on the roof with everybody. The victim told him she was tired and had to study the next day. She started to talk to him more, and he sat down on the bed. He was sitting up by her head, and he reached his arm across the bed and gave her a kiss. He sat back up in bed, and then reached back down and French-kissed her. He stated the victim kissed him back and never said "no."

After they French-kissed again, he got up and shut the door. The victim had taken off the sheet and was lying on her side looking at him. He got back on the bed, and they began French-kissing again. He put his leg on hers, and her hand was rubbing his thigh. He took off his shirt and straddled her. Her legs were between his, and his hands were by her shoulders. He kissed her and then lifted her shirt

and started kissing her stomach. He denied kissing one of her breasts and further denied the victim telling him "no" or to leave or stop.

After kissing her stomach, he unbuttoned her shorts, and the victim said in a "very quiet, soft voice *** '[n]o.' " When she said "no," he stopped and started kissing her again. He thought by saying "no" she meant "[s]low down. You're going too fast. Take your time." He denied she told him to leave or tried to push him away. He kissed her stomach again and tried to take her pants down, but they would not come off because they were tight. At that point, the victim took her pants down to her ankles. Defendant removed them the rest of the way and then removed his. While he took off his pants, the victim spread her legs. He placed his fingers in her vagina, and then tried to place his penis in her vagina. When he started to do this, the victim said "in a soft, quiet voice, '[n]o.' " He testified it was the same type of "no" as when he was trying to take her pants down. He interpreted it as meaning "slow down, you're still going too fast here. Take your time." He stopped and began kissing her again. He moved down to kiss her stomach again and then placed his penis in her vagina. His penis slipped out, and he started to place it back in again when the victim said: " 'No, I can't do this.' " This time, he testified she said "no" in a different, stronger voice. He stopped and rolled over on his side. She got up and put some clothes on. As she started to dress, he told her: " 'Don't put your clothes on. You have a nice looking body.' " He then asked her to " 'jack [him] off' " and she told him no and to put his clothes on. After dressing, he put his arms around her and said: " 'No problem. No big deal. Maybe I'll see you tomorrow.' " He started to kiss her again, and someone knocked on the door and opened it. When she heard the knock, the victim immediately sat down. Janice was at the door and said " '[o]ops, excuse me' " and closed the door. He told the victim he would see her tomorrow and left.

He went across the hall to Becky's room and went out on the roof. John was on the roof, and defendant told him he had "parred" the victim. "Parred" is a slang term for intercourse. He told John she did not want to do it anymore, so he stopped and left. Ron Hartmann also testified defendant had told him, when playing golf the following day, he had "parred" the victim.

Based on the evidence presented, the court found defendant guilty of both counts of criminal sexual assault and of unlawful restraint. The court denied defendant's post-trial motion and sentenced defendant. This appeal followed.

I. CONSTITUTIONALITY OF DEFINITIONS

We first address whether the statutory provisions defining force and consent are unconstitutionally vague. Criminal sexual assault is defined in section 12—13(a)(1) of the Criminal Code of 1961 (Code), which provides in pertinent part:

"(a) The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force." Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1).

"Force or threat of force" is defined in section 12—12(d) of the Code as follows:

"[T]he use of force or violence, or the threat of force or violence, including but not limited to the following situations:

(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat; or

(2) when the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." Ill. Rev. Stat. 1991, ch. 38, par. 12—12(d).

Section 12—17(a) of the Code provides consent shall be a defense to any charge under section 12—13 through section 12—16 of the Code "where force or threat of force is an element of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 12—17(a).) "Consent" is defined as:

"[A] freely given agreement to the act of sexual penetration or sexual conduct in question. Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the accused shall not constitute consent." Ill. Rev. Stat. 1991, ch. 38, par. 12—17(a).

Defendant claims these sections defining "force" and "consent" are unconstitutionally vague because a person of common intelligence could not determine what constitutes "force" and what level of force renders an alleged victim's lack of resistance irrelevant. He further argues, under the broad terms of the statute, various acts in consensual sexual activity could subject a participant to prosecution.

All statutes are presumed to be constitutional, and the party challenging the statute has the burden to clearly establish the alleged constitutional violation. (*People v. Bales* (1985), 108 Ill. 2d 182, 188, 483 N.E.2d 517, 519.) A statute which does not involve first amendment rights is not unconstitutionally vague if it gives a person of ordinary intelligence a reasonable opportunity to know what conduct is unlaw-

ful and provides standards to avoid arbitrary and discriminatory enforcement. (*Bales*, 108 Ill. 2d at 188, 483 N.E.2d at 520.) The determination of whether a statue is void for vagueness must be made in the factual context of the case. (*Bales*, 108 Ill. 2d at 189, 483 N.E.2d at 520; *People v. Wawczak* (1985), 109 Ill. 2d 244, 249, 486 N.E.2d 911, 913.) A defendant may be prosecuted under a statute without violating his right of due process if his conduct falls squarely within the statute's proscription, even though the statute may be vague as applied to other conduct. (*People v. Taylor* (1990), 138 Ill. 2d 204, 211, 561 N.E.2d 667, 670; *People v. Garrison* (1980), 82 Ill. 2d 444, 454, 412 N.E.2d 483, 489.) To sustain a facial challenge, the challenger " 'must demonstrate that the law is impermissibly vague in all of its applications.' " *Taylor*, 138 Ill. 2d at 211, 561 N.E.2d at 670, quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193.

The question of whether the term "force" is unconstitutionally vague was decided by the supreme court in *People v. Haywood* (1987), 118 Ill. 2d 263, 515 N.E.2d 45. There, the court addressed whether section 12—13(a)(1) of the Code (see Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) was unconstitutionally vague because it failed to specifically identify the conduct it proscribed and to provide a standard for its enforcement. Specifically, defendants contended the definition of "force or threat of force" did not set forth with specificity the nature of the force required for the commission of criminal sexual assault. In holding section 12—13(a)(1) satisfied requirements of due process, the supreme court judged the statute was not vague as to what conduct it proscribed. Centering on the defendant's argument of what force was intended to be violative, the supreme court held "that a person of common intelligence and experience [could] distinguish, without difficulty, between sexual acts accomplished by force, as that term is meant in the statute, and for example, sexual activity between consenting adults." *Haywood*, 118 Ill. 2d at 274, 515 N.E.2d at 50.

Likewise, the definition of "consent" appears sufficiently definite to meet the requirements of due process. The statutory definition of consent makes clear when consent has been given and that lack of verbal or physical resistance resulting from force does not constitute consent. We conclude a person of ordinary intelligence is afforded a reasonable opportunity to understand when consent has been freely given and when lack of resistance is the result of force, as that term is defined.

In the present case, the victim testified she did not consent to the sexual acts, and she actively resisted by trying to push defendant

away and continually told him "no," "leave," and "stop." These facts would present circumstances affording a person of ordinary intelligence a reasonable opportunity to know the victim did not consent to have sexual relations, and he or she was committing sexual penetration by force, as defined by statute.

## II. SUFFICIENCY OF THE EVIDENCE

We next address whether there was sufficient evidence to convict defendant of both counts of criminal sexual assault. Defendant argues no rational trier of fact, after considering all the evidence, could find the State proved him guilty of criminal sexual assault beyond a reasonable doubt. He initially contends a heightened degree of scrutiny must be applied since his guilt depends on the credibility of the victim. When the victim and defendant present conflicting versions of the alleged incident, defendant urges the victim's testimony must not be "improbable, unconvincing or contrary to human experience," and if it is, the conviction must be reversed. Defendant argues the State's evidence was "improbable, unconvincing and contrary to human experience" because (1) the victim failed to cry out for help; (2) the victim had a motive to make a false claim against defendant because she had consensual sexual relations with him, was discovered, and had to explain his presence in her bedroom; (3) there was an absence of physical evidence of force; (4) the victim failed to promptly report the assault; (5) the victim failed to leave when she had the opportunity to do so; (6) the victim's account of the incident was "fraught with inconsistencies"; and (7) her story was "contrary to human experience." Defendant also argues the State failed to prove he had the requisite criminal intent to overcome the victim by force.

Initially, we note courts no longer apply a different standard of review in sex offense cases, *i.e.*, the victim's testimony be clear and convincing or substantially corroborated to prove defendant guilty beyond a reasonable doubt. (*People v. Wittenmyer* (1992), 151 Ill. 2d 175, 190, 601 N.E.2d 735, 742; *People v. Schott* (1991), 145 Ill. 2d 188, 202, 582 N.E.2d 690, 697; *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346; *People v. McDade* (1991), 219 Ill. App. 3d 317, 326, 579 N.E.2d 1173, 1180.) Rather, the applicable standard of review, as in *all* cases involving a challenge to the sufficiency of the evidence, is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Wittenmyer*, 151 Ill. 2d at 190, 601 N.E.2d at 742; *Schott*, 145 Ill. 2d at 203, 582 N.E.2d at 697; *People v. Collins* (1985), 106 Ill. 2d 237, 261,

478 N.E.2d 267, 277.) This standard was enunciated by the United States Supreme Court in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, and adopted by our supreme court in *Collins*.

While courts have continued to say a criminal conviction will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt (*People v. Campbell* (1992), 146 Ill. 2d 363, 375, 586 N.E.2d 1261, 1266; *Schott*, 145 Ill. 2d at 203, 582 N.E.2d at 697; *Pintos*, 133 Ill. 2d at 291, 549 N.E.2d at 346; *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 276), this principle must be read in the context of the *Jackson* standard embraced in *Collins*, *i.e.*, in reviewing the determination of the trier of fact, a court cannot substitute its assessment of the evidence and the inferences to be drawn therefrom for that of the trier of fact.

■ With this standard in mind, we conclude the court had sufficient evidence to find defendant guilty beyond a reasonable doubt on both counts of criminal sexual assault. Defendant's argument is, essentially, an attack on the credibility of the victim's claim of criminal sexual assault. The resolution of factual disputes, however, and the assessment of witnesses' credibility are for the trier of fact, and this court will not substitute its judgment for that of the fact finder. *Campbell*, 146 Ill. 2d at 375, 586 N.E.2d at 1266; *McDade*, 219 Ill. App. 3d at 326, 579 N.E.2d at 1180; *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208, 1221.

The victim explicitly testified she did not consent to defendant inserting his fingers into her vagina or to vaginal intercourse. She gave a detailed account of how defendant came into her room, straddled her, kissed her, and later inserted his fingers and then penis into her vagina. During this time, according to her testimony, she repeatedly told him "no," "stop," and "to please leave," and continually tried to push him away. Other witnesses testified regarding the victim's actions following the assault and her demeanor. The court had the opportunity to listen to extensive cross-examination of the victim as well as other witnesses for the State. It also listened to defendant's testimony as to what transpired. The trial court, sitting as trier of fact, had the duty to assess the credibility of the witnesses, resolve the inconsistencies and conflicts in the evidence and was free to disbelieve all or part of defendant's testimony if it so chose.

Viewing the evidence in a light most favorable to the State, there was clearly evidence to support each element of the charged offenses and to permit the judge to find these counts proved beyond a reasonable doubt.

We also take this opportunity to specifically reject defendant's arguments as to why the victim's testimony was not credible. Merely because a victim does not cry out for help or try to escape at the slightest opportunity is not determinative on the issues of whether she was being forced to have sexual intercourse, or whether she consented to having sexual intercourse, especially if she was threatened or in fear of being harmed (*People v. Leonhardt* (1988), 173 Ill. App. 3d 314, 321, 527 N.E.2d 562, 567), overcome by the superior strength of the assailant, or paralyzed by fear. The significance of the failure to cry out or attempt to escape depends upon the circumstances of each case and are merely factors to be considered by the trier of fact in weighing the witnesses' testimony.

Similarly, the lack of medical evidence of physical injury does not establish the victim consented to have sexual intercourse. Physical injury or resistance is not necessary to prove a victim was forced to have sexual intercourse (*People v. Shum* (1987), 117 Ill. 2d 317, 356, 512 N.E.2d 1183, 1198; *Leonhardt*, 173 Ill. App. 3d at 321-22, 527 N.E.2d at 567), and a victim need not subject herself to serious bodily harm by resisting in order to establish penetration was nonconsensual (*People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1027, 554 N.E.2d 556, 563).

Moreover, we reject defendant's argument the victim's testimony was unbelievable because she failed to promptly report the incident. In fact, the evidence indicates she did promptly report the incident. Immediately after the assault, she told Becky defendant had attacked her. She then proceeded to tell her boyfriend and her two next-door neighbors. At that point, she was taken to the hospital, where she again indicated she had been sexually assaulted. Hours later, she reported the incident to the police. A victim's testimony cannot be rejected merely because she did not report the incident to the police immediately. A delay in reporting incidents of sexual assault may be reasonable where the victim's silence is attributed to fear, shame, guilt and embarrassment. (*People v. Foley* (1990), 206 Ill. App. 3d 709, 716, 565 N.E.2d 39, 43-44.) To fix a time limit in which a complaint must be made with the police in order for a victim's testimony to be deemed credible would place an unnecessary burden on the victim and trivialize defendant's actions.

As to defendant's allegation the victim's account was "fraught with inconsistencies," we simply note minor inconsistencies in the testimony do not, of themselves, create a reasonable doubt as to defendant's conviction. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 360, 478 N.E.2d 402, 410.) Regarding defendant's other assertions, the victim

had a motive to testify falsely and her version of what transpired was "contrary to human experience," these—as other matters raised by defendant—were factors for the trial court to consider in evaluating the credibility of the witnesses and in rendering its judgment.

### III. Closing Arguments

Defendant next alleges several statements in the prosecutor's closing argument were improper and deprived him of a fair trial.

### A. Waiver

■ The State initially contends any issue as to these remarks is waived. The general rule is an error not objected to at trial and not raised in a post-trial motion is waived and may not be urged as a ground for reversal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1130; *People v. Herrett* (1990), 137 Ill. 2d 195, 209, 561 N.E.2d 1, 7.) Since defendant did neither in this case, any issue about the remarks is waived. However, even if the claims of error had been properly preserved for review, we find them to be without merit.

### B. Applicable Legal Principles

Prosecutors are afforded wide latitude in closing argument, and improper remarks will not merit reversal unless they result in substantial prejudice to defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445, 521 N.E.2d 38, 57.) Further, statements of counsel and argument based upon facts and circumstances proved, or upon legitimate inference drawn from them, do not exceed the bounds of proper debate. (*Shum*, 117 Ill. 2d at 347, 512 N.E.2d at 1194.) "It is not improper for the prosecuting attorney to reflect unfavorably on the defendant, or to comment on his actions, if based upon competent and pertinent evidence." (*People v. Miller* (1958), 13 Ill. 2d 84, 109, 148 N.E.2d 455, 468-69.) A defendant may not claim prejudice from a prosecutor's comments when those comments were invited by defendant's argument. *People v. Richardson* (1988), 123 Ill. 2d 322, 356, 528 N.E.2d 612, 625.

Although the prosecutor may not argue matters unsupported by the evidence, a trial court is presumed to recognize and disregard improper arguments presented to it (*Richardson*, 123 Ill. 2d at 361, 528 N.E.2d at 627) and consider only competent evidence in ruling on the merits of the case (*People v. Crum* (1989), 183 Ill. App. 3d 473, 487,

539 N.E.2d 196, 204-05). Moreover, this was a bench trial, and a trial judge is presumed to know the law, and such presumption is rebutted only when the record affirmatively shows the contrary. *People v. Sosa* (1990), 195 Ill. App. 3d 828, 836, 552 N.E.2d 1298, 1303.

## C. Analysis

Defendant first objects to the following remarks as misstatements of the State's burden of proof: "force [could] be defined in terms of proceeding without the victim's consent," and defendant "never received an affirmative verbal response to anything he was doing." He argues these misstatements regarding the element of force led the court to believe it was sufficient to prove defendant's guilt that the victim said "no" before penetration.

As to force and consent in closing argument, the State asserted section 12—12(d) of the Code defined "force," and subsection (d)(2) of the definition applied in this case: "[W]hen the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(d)(2).) The prosecutor then noted the disparity in size between the victim and defendant and stated: "Your Honor, force as used in this case is defined by physical stature, and I believe that was clearly present. And force can also be defined in terms of proceeding without the victim's consent. That's also present here."

■ Taken as a whole, this statement cannot be seen as suggesting either (1) defendant could be found guilty without proof of force, or (2) lack of consent alone was sufficient to find defendant guilty. The prosecutor was arguing "force," as defined in the statute, was shown in this case because defendant overcame the victim by his physical strength and size, but also lack of "consent" was proved by the evidence. Since defendant raised the question of consent to rebut the evidence of force, the State had the burden of proof on the issue of consent as well as force. It is within the proper scope of argument for the prosecutor to argue the evidence refuted defendant's claim that the victim consented. Moreover, while force and consent are distinct concepts, the supreme court has noted consent is not irrelevant in determining whether the offense was committed.

> "Although the definition of criminal sexual assault under section 12—13(a)(1) does not refer to either compulsion or consent, this does not mean that consent of the victim is irrelevant in determining whether there was an offense. In common understanding, if it is said that one was forced to perform an act, it follows that the person's act was nonconsensual; and if one

freely consents to the performance of an act upon oneself, clearly that person has not been forced. Thus, although the prosecution is not required to prove nonconsent formally, it is obvious that if the prosecution shows that there was an act of sexual penetration by force, that evidence demonstrates that the act was nonconsensual. To prove the element of force is implicitly to show nonconsent. Too, if force is established it would be redundant to require a separate showing of nonconsent as part of the prosecution's case in chief." *Haywood*, 118 Ill. 2d at 274, 515 N.E.2d at 50.

Similarly, with respect to defendant's complaint on the prosecutor arguing "defendant's own testimony indicates that he never received an affirmative verbal response to anything he was doing," we find this was not an attempt to misstate the burden of proof. During closing argument, defense counsel argued defendant had not forced the victim to have intercourse, but rather he had consensual sex with her. In rebuttal, the prosecutor stressed it was not consensual sex, and defendant's own testimony showed he had not received an affirmative verbal response to any of his acts. Because the victim never said yes, the prosecutor argued the defendant's sexual acts upon the victim were not shown to be consensual. The State had the burden of proving lack of consent on the facts of this case, and the prosecutor's comments were a permissible response to defendant's argument and not an attempt to misstate the burden of proof.

Defendant's second objection is to the prosecutor's statement the court should reject the defendant's "no meant yes" theory of the case because he never argued "no meant yes." The victim testified she told defendant "no." Defendant admitted the victim said "no," but testified he interpreted it to mean "slow down." The prosecutor's characterization of defendant's argument was a reasonable inference from the evidence presented, and it was appropriate for the prosecution to urge the court to reject the defendant's version of the incident, *i.e.*, "no" meant "slow down" rather than "no, I don't want to have sex with you." Moreover, any mischaracterization that may have occurred would not have resulted in substantial prejudice to the defendant and warrant reversal.

Defendant's third complaint is the prosecutor misled the court when she argued: "[t]here [were] no injuries to the victim, but the consent law protects victims in a way by suggesting that the lack of physical evidence does not allow the Court to find consent is being given. The burden of proof is not on the victim to fight an attacker off." We find this was not a misstatement of the law. Defendant ar-

gues this statement misled the court because the court was allowed to find the lack of physical evidence was due to a lack of physical resistance due to consent, not as a result of force. As we previously noted, courts have held medical evidence of physical injury is not necessary to prove the victim was forced to have sexual intercourse, and a lack of medical evidence of physical injury does not establish she consented to having sexual intercourse. *Leonhardt*, 173 Ill. App. 3d at 321-22, 527 N.E.2d at 567; *Shum*, 117 Ill. 2d at 356, 512 N.E.2d at 1198.

Viewed in the context they were made, the prosecutor's statements were not improper; nor can it be said they caused substantial prejudice to the defendant as to constitute reversible error.

### IV. Alleged Failure To Consider Certain Evidence

Defendant next contends he was denied a fair trial because the court disregarded evidence critical to his defense which related to events occurring prior to and after the alleged sexual assaults. He argues this evidence was critical to his defense because his guilt depended upon the credibility of the victim, and the victim's credibility, as well as his own, could be tested by comparing their testimony regarding these events with other witnesses' testimony.

A trial judge sitting as a trier of fact must consider all matters in the record before deciding the case, and where the record affirmatively shows the trial judge did not consider the crux of the defense when entering judgment, the defendant did not receive a fair trial. (See *People v. Bowie* (1976), 36 Ill. App. 3d 177, 180, 343 N.E.2d 713, 715.) Twice during the court's statements it expressly asserted it had considered all the evidence presented and the various versions of the incident in evaluating the credibility of the witnesses. Our reading of the record discloses the trial judge fairly considered the question of credibility based on all the evidence presented and rendered a verdict after considering all the evidence. The court made the following comments in rendering its verdict:

> "Well, first of all, there's been a lot of evidence and a fair amount of argument about things that took place during that day and evening before the events in [the victim's] room and some evidence and some argument about things that all transpired after the events that took place in [the victim's] room; and I certainly don't find that any of that has any real bearing on determining what really happened in the room for a very brief period of time in the early morning hours. It is a matter of the credibility and the believability of the primary actors here who have testified, both [the victim] and Mr. Bowen. And

again it boils down to that issue concerning a very, very brief few minutes of time in the room that evening and not anything that may have transpired before or after these brief few moments.

The law provides what force is and what force may be in the context of the charges here and what consent is and what consent isn't. Evaluating all of the testimony that has been presented to me here today and evaluating the versions that have been told, having viewed the witnesses and attempted to apply all the criteria for evaluating the testimony of witnesses around their believability, I do find that the State has proven the charges of criminal sexual assault and unlawful restraint beyond a reasonable doubt; and accordingly, I find the defendant guilty.

\* \* \*

\*\*\* I said I believe on all the evidence the State has proven those charges beyond a reasonable doubt."

■■ Although the court explained the focus of the trial was on what transpired in the victim's bedroom and not what happened before or after, these statements do not demonstrate the court disregarded any evidence. Irrespective of whether the court believed defendant's account of the events prior to and after the sexual assault, it could still find the victim's recollection of the events occurring in her bedroom to be more credible. Therefore, we find defendant's argument unpersuasive.

## V. Ineffective Assistance Of Counsel

Defendant also maintains he was deprived of a fair trial because he received ineffective assistance of counsel. He argues counsel made errors relating to the issues of force and consent in that counsel failed to (1) correct the State's allegedly erroneous argument that "force" could be defined as "lack of consent," or to identify the issue of whether the State had proved defendant intended to overcome the victim by force; (2) correct the State's alleged misstatement concerning its burden of proof on the affirmative defense of consent, i.e., the State had to show the victim's lack of resistance was the result of the use of force or threat of force, and its alleged claim that "having intercourse after the alleged victim verbally said 'no' without first receiving a verbal 'yes' constituted criminal sexual assault"; and (3) elicit testimony from Becky Levi that she thought the victim was kidding when the victim told her she had been attacked by defendant.

To establish ineffective assistance of counsel, a defendant must prove "that despite a strong presumption of counsel's professional competence, counsel's allegedly unprofessional acts or omissions in fact were 'outside the wide range of professionally competent assistance,' " (*People v. Stewart* (1990), 141 Ill. 2d 107, 118, 565 N.E.2d 968, 973, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 690, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066) and "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). Both prongs of the test must be satisfied before defendant can prevail on a claim of ineffective assistance of counsel. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511, 578 N.E.2d 952, 956, *cert. denied* (1992), 503 U.S. 942, 117 L. Ed. 2d 630, 112 S. Ct. 1489.

■ Defendant's first two allegations of ineffective assistance of trial counsel center on counsel's failure to object to or correct alleged misstatements of law made by the prosecutor during closing argument. As we previously discussed, viewing these statements in the context in which they were made and under the law relating to consent and force, the statements were within the range of proper argument and not misstatements of the law. Therefore, trial counsel had no reason to object. Moreover, we find unpersuasive defendant's argument that counsel failed to identify or raise the issue of the sufficiency of the evidence to prove the element of force. During closing argument, counsel attacked the reliability of the victim's testimony and attempted to demonstrate this testimony was inconsistent with defendant having used force on her. Defense counsel further argued the State had not proved defendant guilty beyond a reasonable doubt but rather contended that consensual intercourse occurred. Obviously defense counsel identified and made an issue of whether force was used against the victim.

Similarly, counsel's failure to elicit certain testimony from Becky Levi does not render counsel's representation objectively unreasonable. In all other respects, counsel's representation appears competent. He engaged in effective presentation of evidence and vigorous cross-examination of witnesses. He delivered a strong closing argument attacking the credibility of the victim's testimony by illustrating how her behavior before, after, and during the charged sexual assault could be regarded as inconsistent with the behavior to be expected of someone who had been sexually assaulted. He addressed the issues of consent, the lack of the use of force, and the State's burden to prove

defendant guilty beyond a reasonable doubt. He filed an extensive post-trial motion.

The failure to inquire of this one witness about a statement she made does not render defense counsel's representation objectively unreasonable. Although the statement would have been a factor to consider in assessment of the victim's testimony, testimony of Becky's initial impression of the complaint would not have been determinative. Defendants are not entitled to perfect counsel, but rather competent counsel, and the law does not require a perfect trial, but rather a fair one. (*Lutwak v. United States* (1953), 344 U.S. 604, 619, 97 L. Ed. 593, 605, 73 S. Ct. 481, 490; *People v. Berland* (1978), 74 Ill. 2d 286, 311, 385 N.E.2d 649, 660.) We conclude defendant received a fair trial and counsel was not derelict in the performance of his duties so as to render his representation incompetent.

Moreover, defendant has failed to demonstrate actual prejudice under the second prong of the *Strickland* test, prejudice. There was sufficient evidence for the court to find defendant guilty, and we find the result would not have been different "but for" the alleged errors. Defendant's ineffectiveness claim, therefore, must be rejected.

## VI. Unlawful Restraint

Defendant next argues his conviction for unlawful restraint must be reversed because the State failed to prove its elements beyond a reasonable doubt. Alternatively, he argues the conviction must be reversed because unlawful restraint is an included offense of criminal sexual assault.

In deciding this issue, it is necessary to identify the exact conduct underlying the charge in the indictment under which defendant was convicted. Count III alleged defendant committed the offense of unlawful restraint "in that the said defendant knowingly and without legal authority, detained [the victim], in that he *laid down on top of her and refused to allow her to rise.*" (Emphasis added.) There are multiple instances of conduct which could possibly support a charge of unlawful restraint in this case. It appears, however, the specific instance of conduct to which the charge was directed was the act of detention occurring during the criminal sexual assaults. It was during the criminal sexual assaults that defendant was "on top of her." Since it was this conduct defendant was convicted of, it must now be determined whether this unlawful restraint conviction can stand.

Unlawful restraint is committed when a defendant "knowingly without legal authority detains another." (Ill. Rev. Stat. 1991, ch. 38, par. 10—3(a).) The gist of unlawful restraint is the detention of a per-

son by some conduct which prevents him from moving from one place to another. (*People v. Kittle* (1986), 140 Ill. App. 3d 951, 956, 489 N.E.2d 481, 484.) The detention must be wilful, against the victim's consent, and prevent movement from one place to another. (*People v. Satterthwaite* (1979), 72 Ill. App. 3d 483, 485, 391 N.E.2d 162, 164.) Actual or physical force is not a necessary element of unlawful restraint as long as an individual's freedom of locomotion is impaired. *People v. Cohoon* (1942), 315 Ill. App. 259, 261, 42 N.E.2d 969, 970; *People v. Warner* (1981), 98 Ill. App. 3d 433, 436, 424 N.E.2d 747, 749; *Kittle*, 140 Ill. App. 3d at 956, 489 N.E.2d at 485.

The supreme court has also recognized, however, prejudice results to a defendant when more than one offense is carved from the same physical act, and with regard to multiple acts, prejudice exists if a defendant is convicted of more than one offense, some of which are, by definition, included offenses. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) As this court has found, when a defendant has been convicted of both unlawful restraint and criminal sexual assault, the conviction of unlawful restraint must be vacated. *People v. Yeast* (1992), 236 Ill. App. 3d 84, 91.

■ The unlawful restraint charged in the indictment was that which the legislature addressed in the criminal sexual assault statute and is conduct inherent in every case of criminal sexual assault by force. As the restraint charged was not independent of the sexual assault, it cannot be punished as such. Defendant's conviction for unlawful restraint must therefore be vacated. See *Yeast*, 236 Ill. App. 3d at 91, 93; see also *Leonhardt*, 173 Ill. App. 3d at 322, 527 N.E.2d at 567; *People v. Sperow* (1988), 170 Ill. App. 3d 800, 814, 525 N.E.2d 223, 233; *People v. Kuykendall* (1982), 108 Ill. App. 3d 708, 710, 439 N.E.2d 521, 523 (holding that unlawful restraint could not even be an included offense); *cf. People v. Paulick* (1988), 174 Ill. App. 3d 868, 870-71, 529 N.E.2d 28, 30; *People v. Bergin* (1992), 227 Ill. App. 3d 32, 43-44, 590 N.E.2d 939, 947-48.

## VII. Consecutive Sentences

The court sentenced defendant, pursuant to section 5—8—4(a) of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a)), to a consecutive term of four years' imprisonment for each criminal sexual assault. Defendant argues the imposition of consecutive sentences was a violation of both due process and double jeopardy. He contends section 5—8—4(a), as applied to require consecutive sentences here, violates due process because it is not reasonably related to the legislative intent of deterring and punishing

multiple acts of sexual assault. He argues the commission of sexual assault inherently involves multiple acts of contact between the victim and defendant. "[A]s a precursor to insertion of his penis," defendant placed his fingers in the vagina of the victim. He contends that this act is such a "predictable and common occurrence" he would not have known he was committing an offense and would not have been deterred from committing the second act of penetration. Therefore, according to defendant, the legislative intent of the statute is not furthered by imposing a consecutive sentence for a "preparatory act." Defendant also requests this court to reconsider our decision in *People v. Ewald* (1991), 210 Ill. App. 3d 7, 568 N.E.2d 451, in light of the second district's decision in *People v. Bole* (1991), 223 Ill. App. 3d 247, 585 N.E.2d 135, *appeal allowed* (1992), 144 Ill. 2d 636.

### A. Due Process

As a general rule the legislature, under the State's police power, has the discretion to prescribe penalties for defined offenses, to declare and define conduct constituting a crime and to determine the nature and extent of punishment for it. (*People v. Walcher* (1987), 162 Ill. App. 3d 455, 458, 515 N.E.2d 319, 321.) This authority is limited by the due process requirement that the classification of a crime and the penalty provided be reasonably designed to remedy the evils which the legislature has determined to be a threat to public health, safety and general welfare. (*People v. Steppan* (1985), 105 Ill. 2d 310, 319, 473 N.E.2d 1300, 1305; *Walcher*, 162 Ill. App. 3d at 458, 515 N.E.2d at 321.) A statute is presumed to be constitutional, and the party challenging it has the burden of clearly establishing the alleged constitutional violation. (*People v. Hamm* (1992), 149 Ill. 2d 201, 208-09, 595 N.E.2d 540, 543; *Bales*, 108 Ill. 2d at 188, 483 N.E.2d at 519.) Since section 5—8—4 of the Unified Code does not impinge upon a fundamental right of liberty, it will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Hamm*, 149 Ill. 2d at 216, 595 N.E.2d at 546; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 368, 489 N.E.2d 1374, 1382.

Section 5—8—4 of the Unified Code was amended, effective July 1, 1988, to provide when a defendant was convicted of a violation of section 12—13 or 12—14 of the Code, the court *shall enter sentences to run consecutively.* (Pub. Act 85—1030, §3, eff. July 1, 1988 (1988 Ill. Laws 200, 203).) In *Wittenmyer* (151 Ill. 2d at 195-96, 601 N.E.2d at 744-45), the supreme court held:

"After carefully reviewing the plain language of this section, we believe that the legislature has provided for *two exceptions* to the general rule that a trial court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. First, if one of the offenses for which defendant was convicted was a Class X or Class 1 felony *and* the defendant inflicted severe bodily injury, the legislature has mandated that the trial court impose consecutive sentences. Second, if the defendant was convicted of a violation of section 12—13 or 12—14 of the Criminal Code, the legislature had mandated that the trial court must impose consecutive sentences. See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).

\* \* \*

[The] legislative history clearly indicates to us that the legislature intended to have two separate and distinct exceptions to the general rule that the court shall not enter consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective—one, if the defendant was convicted of a Class X or Class 1 felony and inflicted severe bodily injury, or two, if the defendant was convicted of a violation of section 12—13 or 12—14 of the Criminal Code." (Emphasis in original.)

Given this interpretation of section 5—8—4(a) of the Unified Code, defendant's argument must fail. While defendant refers to inserting his fingers in the victim's vagina as a mere "preparatory act," the fact remains this act is a separate penetration and an independent violation of section 12—13 of the Code. Consecutive sentences, therefore, were mandatory. The imposition of consecutive sentences in this instance is rationally related to the legislative intent of deterring further assaults. As the supreme court has noted "[sexual assault] is unlike other offenses: with each act, the victim's psychological constitution and most intimate part of her being [is being] violently invaded." (*People v. Segara* (1988), 126 Ill. 2d 70, 78, 533 N.E.2d 802, 805.) "To the victim, each [sexual assault] [is] 'readily divisible and intensely personal; each offense is an offense against *a person.*' " (Emphasis in original.) (*Segara,* 126 Ill. 2d at 77, 533 N.E.2d at 805, quoting *Pruitt v. State* (1978), 269 Ind. 559, 565, 382 N.E.2d 150, 154.) Here, defendant committed two violations of the Code and must receive consecutive sentences for each—without any violation of due process.

Moreover, the supreme court's interpretation of section 5—8—4(a) of the Unified Code in *Wittenmyer* supports our decision in *Ewald* and is contrary to *Bole*. (See also *People v. Glass* (1992), 239 Ill. App. 3d 916, 930 (where this court reaffirmed our position in *Ewald*).) We therefore continue to adhere to our position in *Ewald*.

## B. Double Jeopardy

■ Defendant also argues the imposition of consecutive sentences in this case violates principles of double jeopardy because he is being punished twice for what he believes was one offense. In *McDade*, this court held a defendant's double jeopardy rights were not implicated where he was convicted of two separate acts of sexual penetration, *i.e.*, inserting his penis into the victim's vagina and inserting his penis into the victim's anus. (*McDade*, 219 Ill. App. 3d at 330, 579 N.E.2d at 1182-83.) In the present case, count I of the indictment alleged defendant placed his penis in the victim's vagina, and count II of the indictment alleged defendant placed his fingers in the victim's vagina. Clearly, two separate acts of sexual penetration occurred, and the State proved these two separate acts of criminal sexual assault. Consequently, defendant's double jeopardy rights are not implicated. See *McDade*, 219 Ill. App. 3d at 329-30, 579 N.E.2d at 1182-83; *Foley*, 206 Ill. App. 3d at 717-18, 565 N.E.2d at 44-45.

A remand for resentencing on the criminal sexual assault counts is not required because the record reveals no indication the defendant's sentences for criminal sexual assault were influenced by the sentence for unlawful restraint. (See *Geneva*, 196 Ill. App. 3d at 1029, 554 N.E.2d at 564.) Accordingly, the judgments for criminal sexual assault are affirmed; the conviction for unlawful restraint is vacated.

Affirmed in part; vacated in part.

LUND and GREEN, JJ., concur.