(No. 69599.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOE TAYLOR, Appellee.

*Opinion filed September 26, 1990.*

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Nathan P. Maddox, Assistant Attorneys General, of counsel), for the People.

Howard B. Eisenberg, of Carbondale, and Tom Miller, law student, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Joe Taylor, was charged by information in the circuit court of Jackson County with the offenses of unlawful possession of protected animals (Ill. Rev. Stat. 1987, ch. 61, pars. 2.36a(a), 3.21), operating as a taxidermist without a valid license (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(a)), and possession of mammal parts not bearing coded origin tags (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(c)). On the defendant's motion, the trial judge found section 3.21 of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21) unconstitutionally vague on its face. The trial judge then dismissed all three counts

of the information, noting that the unlawful possession of protected animals offense alleged in count I of the information was predicated on a violation of section 3.21, and that the remaining two counts also alleged a violation of that provision. The State appealed the trial judge's dismissal of the charges against defendant directly to this court pursuant to Supreme Court Rule 603 (107 Ill. 2d R. 603). We reverse and remand.

On March 2, 1989, a three-count information was filed against defendant in the circuit court of Jackson County. Count I charged that on February 3, 1989, defendant engaged in unlawful possession of protected animals in violation of section 2.36a(a) of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 2.36a(a)). That provision provides that a person commits a Class 3 felony when the person, "for profit or commercial purposes, knowingly *** possesses *** any animal or part of animal of the species protected by this Act, contrary to the provisions of this Act, and such animals, in whole or in part, are valued in excess of a total of $300." The information specifically charged that defendant possessed for commercial purposes two whitetail deer heads, two cock pheasant skins, one cock quail skin, one fox squirrel, one gray squirrel, one weasel, one muskrat skin, and one Canadian goose skin. The information charged that defendant possessed the animal parts in violation of section 3.21 of the Act (Ill. Rev. Stat. 1987, ch. 61, par. 3.21).

Count II charged defendant with operating as a taxidermist without a valid license in violation of section 3.21(a) of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(a)). Section 3.21(a) specifies that "[e]very person before engaging in the business of taxidermy shall obtain a license for such purpose from the [Illinois] Department [of Conservation]."

Count III of the information charged that defendant was in possession of mammal parts not bearing coded origin tags as mandated by section 3.21(c) of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(c)). Section 3.21(c) requires that "[a]ll birds or mammals or parts thereof that have been received, preserved or mounted or possessed by a taxidermist are required to bear a coded origin tag or label. The origin tag or label shall correspond with written records containing more complete information as required by the Department." (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(c).) The information listed two whitetail deer, one weasel, six deer hides, two deer capes, and five deer racks that were in defendant's possession on February 3, 1989, while defendant was allegedly engaged in the business of taxidermy. None of the animal parts bore coded origin tags.

The trial court held a preliminary hearing on count I of the information on March 29, 1989. Michael O'Neill, an Illinois Department of Conservation police officer, testified at the hearing in behalf of the State. O'Neill recounted a conversation he had on February 1, 1989, with David Charles, another Illinois Department of Conservation police officer. Both officers were investigating an anonymous tip that deer had been poached in northern Illinois and had been transported to a taxidermist in southern Illinois named Joe Taylor. Charles informed O'Neill during the conversation that he had contacted defendant Taylor at his residence in Murphysboro, Illinois. Charles had inquired whether defendant was a taxidermist, stating that he was interested in having a deer head mounted. Defendant responded in the affirmative and invited Charles into his home to view examples of his work. When Charles entered defendant's home, he saw two deer heads hanging on the wall. Both were in the process of being mounted. Charles told O'Neill that there were no coded origin tags attached to the deer

heads and that a search of the Department of Conservation's records (erroneously) revealed that a taxidermy permit had not been issued to defendant.

O'Neill testified that he then obtained a search warrant for defendant's premises. During the execution of the warrant on February 3, 1989, officers seized two whitetail deer heads, two cock pheasant skins, one cock quail skin, one fox squirrel, one gray squirrel, one weasel, one muskrat skin, and one Canadian goose skin; none of the animals or animal parts bore coded tags or labels. O'Neill stated that the two whitetail deer heads were hanging on the wall and had pins in them. The other species were stored in a freezer, either skinned or frozen whole.

On cross-examination, O'Neill revealed that a taxidermist license issued in defendant's name, which expired January 31, 1989, had been seized at the premises. He also testified that during the seizure defendant claimed that the two cock pheasant skins, the one cock quail skin, the fox squirrel, the gray squirrel, the muskrat skin and the Canadian goose skin were his personal property.

At the conclusion of the hearing, the trial judge found probable cause to believe that defendant had committed the offenses with which he was charged and defendant was arraigned. Defendant thereafter filed a motion in which he sought a declaration that section 3.21 of the Wildlife Code was unconstitutional on its face and as it applied to his case. Defendant alleged that section 3.21 is unconstitutionally vague because it fails to sufficiently describe what acts constitute "engaging in the business of taxidermy." The trial judge heard the parties' arguments on the motion on the day the case was set for trial.

The trial judge later issued a written order dismissing the three-count information, finding section 3.21 of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21) un-

constitutionally vague. After reviewing definitions of taxidermy in other jurisdictions, the trial judge determined that the phrase "engaging in the business of taxidermy" is capable of various meanings. Citing this court's opinion in *People v. Jihan* (1989), 127 Ill. 2d 379, the trial judge concluded that the statute's failure to define the disputed phrase deprived defendant of the guarantees of the due process provisions of the Federal and State Constitutions.

The State here challenges the trial court's finding, maintaining that the disputed phrase should be given its plain and ordinary meaning. Defendant argues that the statute on which the charges against him are based is vague and that he was not provided adequate notice of what actions were proscribed. In particular, defendant takes exception to the failure of the Wildlife Code to define the phrase "engaging in the business of taxidermy" and contends that this failure renders section 3.21 of the Code invalid on its face. He argues that the term "taxidermy" denotes a range of activity and, without an express definition, no boundaries exist within which a person may pattern his behavior. Defendant also points to the application of the disputed statute to those "engaged in the business," and complains that the statute does not provide fair notice as to whether its proscriptions are meant to apply only in the commercial context or whether it is meant also to include within its scope those hobbyists who occasionally mount their own specimens. In addition to arguing that the statute is void on its face, defendant further contends that the disputed statute is unconstitutionally vague as applied to him.

The due process provisions of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) require that the proscriptions of a penal statute be clearly defined. (*People v. Haywood* (1987), 118 Ill. 2d 263, 269; *Grayned v. City of Rockford*

(1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298.) It is a well-established principle that a person should not be subjected to a penalty for certain conduct unless the words of the statute clearly describe the conduct prohibited. (See *United States v. Campos-Serrano* (1971), 404 U.S. 293, 297, 30 L. Ed. 2d 457, 462, 92 S. Ct. 471, 474.) The requirement that laws not be vague furthers three important policies. First, laws should give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may fashion his conduct accordingly. Second, laws must provide explicit standards to prevent their arbitrary or discriminatory application by policemen, judges, and juries. Finally, where first amendment freedoms of expression are involved, a statute should not be so vague that it chills the free exercise of those protected rights by creating fear that such conduct may fall within the statute's proscription. *Grayned*, 408 U.S. at 108-09, 33 L. Ed. 2d at 227-28, 92 S. Ct. at 2298-99; *People v. Garrison* (1980), 82 Ill. 2d 444, 453.

When a penal statute which does not involve first amendment freedoms is challenged as unconstitutionally vague on its face, courts will invalidate the statute only if no standard of conduct is specified at all. (*Smith v. Goguen* (1974), 415 U.S. 566, 578, 39 L. Ed. 2d 605, 614-15, 94 S. Ct. 1242, 1249-50; *Haywood*, 118 Ill. 2d at 270.) A defendant may be prosecuted under a statute without violating his right of due process if his conduct falls squarely within the statute's proscriptions, even though the statute may be vague as applied to other conduct. (*Garrison*, 82 Ill. 2d at 454.) To sustain a facial challenge, therefore, the challenger "must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d

362, 371, 102 S. Ct. 1186, 1193; *Haywood*, 118 Ill. 2d at 270.

For example, the Court in *Lanzetta v. New Jersey* (1939), 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618, found a statute that punished any person who is declared to be a "gangster" repugnant to the due process clause of the fourteenth amendment. The statute in question included as part of the definition of gangster a person "known to be a member of any gang consisting of two or more persons." (*Lanzetta*, 306 U.S. at 452, 83 L. Ed. at 889, 59 S. Ct. at 618.) The Court found that the penal statute did not sufficiently inform those who were subject to it what conduct on their part would render them liable for the offense. The statute did not define the term "gang," and the Court noted the numerous and varied meanings of the word indicated in dictionaries and in historical and sociological writings. The Court further found that there was no commonly understood meaning of the term derivable from the common law. *Lanzetta*, 306 U.S. at 454-55, 83 L. Ed. at 890-91, 59 S. Ct. at 619-20.

Unlike the statute in *Lanzetta*, however, we believe that the statute before us defines the criminal offense with sufficient certainty that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. It has long been held that "in the absence of a statutory definition indicating a different legislative intention, the courts will assume that statutory words have their ordinary and popularly understood meanings." (*People v. Blair* (1972), 52 Ill. 2d 371, 373.) Resort to dictionary definitions reveals a common and singular meaning of the term "taxidermy": "[T]he art of preparing, stuffing and mounting the skins of animals, esp[ecially] so as to make them appear lifelike." Webster's New World Dictionary 1372 (3d coll. ed. 1988). See also American Heritage Dictionary 1246 (2d coll. ed.

1982) ("The art or operation of preparing, stuffing, and mounting the skins of dead animals for exhibition in a lifelike state"); XI Oxford English Dictionary 122 (reprint 1970) ("The art of preparing and preserving the skins of animals, and stuffing and mounting them so as to present the appearance, attitude, etc. of the living animal"); Random House Dictionary of the English Language 1457 (1969) ("the art of preparing and preserving the skins of animals and of stuffing and mounting them in lifelike form").

Further, subsection c of section 3.21 of the Wildlife Code refers to "birds or mammals or parts thereof that have been received, preserved or mounted or possessed by a taxidermist." (Ill. Rev. Stat. 1987, ch. 61, par. 3.21(c).) The provision's reference to the basic acts involved in the practice of taxidermy makes clear that the General Assembly intended that the term "taxidermy," as it appears in the Wildlife Code, convey its plain and ordinary meaning. See also Ill. Rev. Stat. 1987, ch. 61, par. 3.21(h) ("All persons licensed as taxidermists under this Act who shall ship any birds or mammals or parts thereof that have been received, preserved or mounted ***").

Finally, contrary to the finding of the trial court here, a survey of statutes adopted by other jurisdictions demonstrates the same basic definition of the disputed term. (See, *e.g.*, Ariz. Rev. Stat. Ann. §17—101(18) (Supp. 1989) (" 'Taxidermist' means any person who engages for hire in the mounting, refurbishing, maintaining, restoring or preserving of any display specimen"); Del. Code Ann. tit. 30, §2301(75) (Supp. 1988) (" 'Taxidermist' includes every person who prepares, stuffs or mounts for hire the skins of birds, quadrupeds, fish or other animals"); Wis. Stat. Ann. §29.136(1) (West 1989) (" 'taxidermist' means a person who mounts or preserves the carcass of any wild animal for consider-

ation'').) Although a review of the statutes of other States is not necessarily helpful in resolving a vagueness challenge to a statute of this State, we do note that in those jurisdictions where the term is defined the standard dictionary definition has been adopted.

Given the universally understood meaning of the term, we cannot agree that the disputed provision, with respect to its failure to define the term taxidermy, is unconstitutionally vague on its face. The statute provides an individual with ample notice that any conduct which falls within the range of activity under the commonly understood meaning of taxidermy must be performed pursuant to the dictates of the statute. We believe that section 3.21 of the Wildlife Code fairly describes the conduct forbidden, and men of common intelligence can readily understand its meaning and application. See *Connally v. General Construction Co.* (1926), 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127; *People v. Ross* (1968), 41 Ill. 2d 445, 448.

We reach the same conclusion regarding defendant's attack on the failure of the statute to define the phrase "engaging in the business of taxidermy." Defendant complains that the phrase "engaging in the business" has been interpreted to include a range of conduct from an isolated and casual business activity (see *Dealer's Transport Co. v. Reese* (5th Cir. 1943), 138 F.2d 638, 641) to a continuous occupation or principal business demonstrating a continuity of practice (see *York v. Dotson* (Tex. Civ. App. 1954), 271 S.W.2d 347, 349).

By its terms, section 3.21 reflects the broader concern of the General Assembly when it enacted the Wildlife Code to protect and regulate the hunting and capture of certain species. The disputed provision sets forth requirements for obtaining a taxidermy license and regulates what records are required to be kept by those engaging in taxidermy. Included within the list of records

required to be kept are records of all birds or mammals, or parts thereof, received or returned by the taxidermist. (Ill. Rev. Stat. 1987, ch. 61, par. 3.21.) It is apparent from the structure of the Code that the taxidermy licensing requirement, with its concomitant regulatory scheme, was enacted as a further means to ensure that protected animals are taken in compliance with the other provisions of the Code. The minimal $25 licensing fee (see Ill. Rev. Stat. 1987, ch. 61, par. 3.21(a)) also demonstrates that police regulation, rather than revenue raising, was the motive behind the General Assembly's enactment of the licensing procedure.

Where the evident object of a statute or ordinance, in requiring a license and imposing a penalty for its violation, is police regulation and the protection of the public, rather than a means of raising revenue, even a minimal amount of involvement in the regulated activity will constitute "engaging in the business." (*Mueller v. Burchfield* (Mo. App. 1949), 218 S.W.2d 180, 183, *rev'd on other grounds* (1949), 359 Mo. 876, 224 S.W.2d 87; *cf. People v. Mattei* (1942), 381 Ill. 21, 28 (isolated instance of treatment sufficient to bring defendant's conduct within scope of statute forbidding the practice of medicine without a license).) Moreover, courts interpreting criminal provisions that contain the phrase "engaged in the business" have focused on activity which occupies the time, attention and labor of the person for the purpose of profit. (See, *e.g., United States v. Day* (6th Cir. 1973), 476 F.2d 562, 567 (court upheld against constitutional challenge the phrase "engaged in business" contained in statute prohibiting any person from engaging in business as a firearms or ammunition importer, manufacturer, or dealer without a Federal license).) Here, a review of the disputed provision demonstrates that the legislature inserted the phrase "engaging in the business" in order to exclude the noncommercial hobbyist

from the provision's scope, rather than to require a continuous pattern of business activity. We therefore believe that the disputed provision, pursuant to the plain meaning of its terms, embraces within its scope anyone who performs taxidermal services for profit. (See *United States v. Jackson* (S.D. Ohio 1972), 352 F. Supp. 672, 674.) This meaning, ascertainable to persons of common intelligence, sufficiently establishes standards for inclusion and exclusion of conduct subject to the proscriptions of the disputed provision.

The trial court in its order nevertheless cites this court's opinion in *People v. Jihan* (1989), 127 Ill. 2d 379, and reads that decision to require that a criminal statute must contain definitions for each element of an offense. We disagree. At issue in *Jihan* was the validity of provisions of the Illinois Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4401 *et seq.*), repealed subsequent to the defendant's conviction, that prohibited the unlicensed practice of midwifery. The defendant in *Jihan* appealed her conviction under the disputed provisions, contending that the term "midwifery," undefined in the Act, was unconstitutionally vague. Analyzing the statute in light of the facts before it, the court found that the defendant's actions were not clearly proscribed. The court determined that the language of the midwifery statute could be read to prohibit persons not licensed as midwives from delivering babies, rather than the State's more broad reading of the statute to prohibit such persons from assisting at birth. Because there was no evidence that the defendant delivered the baby, the court concluded that the provision did not clearly prohibit the conduct engaged in by the defendant. *Jihan*, 127 Ill. 2d at 389.

We discern nowhere in the *Jihan* decision the proposition that all elements of an offense in a criminal statute must be defined. To the contrary, the *Jihan* court did

not find the disputed provision unconstitutionally vague on its face; it instead adopted a more limited construction of an ambiguous term in favor of the accused. (*Jihan*, 127 Ill. 2d at 388.) Due process does not require "impossible standards" of clarity. (*United States v. Petrillo* (1947), 332 U.S. 1, 7-8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1541-42; *People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 171.) To require the General Assembly to define each element of an offense, even though the common meaning of the terms themselves defines the criminal offense with sufficient certainty that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement, would place upon that branch of government a burden not required by the due process provisions of the Federal and State Constitutions or by common sense. As a general proposition, a penal statute must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." (*Petrillo*, 332 U.S. at 8, 91 L. Ed. at 1883, 67 S. Ct. at 1542.) As we have already discussed, we believe that the disputed provision meets this requirement. Unlike the term midwifery in *Jihan*, for which there was a range of activity which did not fall within a commonly understood definition, the phrase "engaging in the business of taxidermy" describes activity with boundaries within which persons may pattern their behavior.

For the reasons previously discussed, we conclude that section 3.21 of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21) is not so vague as to be facially invalid. The phrase "engaging in the business of taxidermy" contained in the disputed provision should be given its plain and ordinary meaning. When given that meaning, the phrase clearly defines the activity proscribed.

Defendant finally contends that his alleged conduct does not meet the plain and ordinary meaning of the statutory terms and believes that the statute is unconstitutionally vague as applied to him. Because we have before us only the transcript of the preliminary hearing and the allegations contained in the dismissed information, the record of the case is not sufficiently developed to determine whether section 3.21 is unconstitutionally vague as applied to defendant.

We reverse the judgment of the trial court finding section 3.21 of the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 3.21) unconstitutionally vague on its face and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed;*
*cause remanded.*