NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2011
Decided August 25, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 07-3001

| | |
|---|---|
| UNITED TAXIDERMISTS ASSOCIATION, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 05 C 6288 |
| ILLINOIS DEPARTMENT OF NATURAL RESOURCES, *Defendant-Appellee.* | Amy J. St. Eve, *Judge.* |

**O R D E R**

The United Taxidermists Association, a group of taxidermists licensed to practice in Illinois, sued the Illinois Department of Natural Resources under 42 U.S.C. § 1983, asserting that the provisions of the Illinois Wildlife Code, 520 ILCS 5/1.1-4.4, that permit warrantless searches of taxidermists' businesses violate the Fourth Amendment. The district court granted summary judgment for the IDNR after concluding that the Code satisfies the requirements under *New York v. Burger*, 482 U.S. 691 (1987), for warrantless searches of closely regulated businesses. Because the Association failed to show that the searches under the Code violate its Fourth Amendment rights, we affirm the judgment.

## I.

The Illinois Wildlife Code grants the IDNR authority to regulate the taxidermy industry. 520 ILCS 5/1.2, 1.2x, 1.3. Taxidermists in Illinois must be licensed and keep detailed written records of all birds, mammals, or any animal body parts that they receive. *Id.* § 5/3.21(a), (b). Additionally, taxidermists need to attach a tag or label to any animal or animal part they possess; that tag, which typically contains an abbreviated description of the animal, must correspond to the more thorough, written record of the animal required by section 3.21(b) (its species; the date it was received; and the name, address, and license number of the person who delivered it). *Id.* § 5/3.21(c). "Taxidermy records" must be open for inspection by "peace officers" at any reasonable time. *Id.* § 5/3.21(d).

Under section 3.21, the IDNR has conducted warrantless searches of the taxidermy shop of James Redfern, the leader of the Association, about once a year for 25 years. During an inspection in 1996, he received a warning for a Code violation, but he was not fined, and he did not lose his license. Still, frustrated with the inspection of his freezer containing animals and animal parts, Redfern formed the Association, ostensibly to alert like-minded taxidermists to join his cause. He solicited 650 Illinois taxidermists to become part of his group, but only 30 joined.

The Association sued the IDNR in 2005, seeking a declaratory judgment that warrantless administrative searches of taxidermy businesses under section 3.21(d) of the Code violate the Fourth Amendment. The IDNR moved for summary judgment, asserting that the searches are constitutional under *New York v. Burger*, 482 U.S. 691 (1987), which permits reasonable warrantless inspections of closely regulated commercial businesses. Under *Burger*, an inspection is reasonable if a substantial government interest informs the regulatory scheme, the warrantless inspection is necessary to further the scheme, and limitations on the inspection ensure a constitutionally adequate substitute for a warrant. The third requirement is broken down further: the statute must provide sufficient notice that the inspection is performed by the law, must have a properly defined scope, and must limit the inspector's discretion.

The Association agreed that *Burger* controlled the case but maintained that section 3.21 of the Code did not meet the Court's requirements. Regarding the first prong of *Burger*, the Association conceded that a substantial government interest informs the inspection of taxidermists' written records but argued that no similar interest supports the inspection of the corresponding tags attached to the animals. And even if the Code met the first *Burger* requirement, the Association continued, the Code still failed *Burger*'s third prong because the statute does not define the "taxidermy records" subject to inspection and thus does not

provide notice to taxidermists that even the tags are subject to search. The Association did not challenge whether the Code satisfied the second prong of *Burger.*

The district court granted summary judgment for the IDNR on the basis of *Burger.* The court rejected the Association's narrow application of *Burger*'s first prong to the Code's tagging requirement. It explained that the appropriate inquiry is whether a substantial government interest informs the entire regulatory scheme, not a portion of it. The court concluded that the government has a substantial interest in regulating the taxidermy industry as a whole in order to carry out the statutory purpose of protecting Illinois wildlife. The court also concluded that searches under the Code satisfy the third prong because the statute provides sufficient notice that the inspection of "taxidermy records" includes both written records and the tags affixed to animals and adequately limits the time, place, and scope of inspections.

## II.

On appeal the Association reasserts its narrow argument that inspections under the Code do not meet the first *Burger* prong because there is no substantial government interest in tagging animals. Although this circuit has not explored the *Burger* test extensively, our prior interpretations have construed the first step as asking whether a substantial interest drives the entire regulatory scheme, not a particular part of it. *See Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997) (substantial government interest in Chicago's food-safety regulations); *Lesser v. Espy*, 34 F.3d 1301, 1306-08 (7th Cir. 1994) (substantial government interest in regulation of sale of rabbits for research). Thus, the relevant inquiry here is whether a substantial government interest informs the taxidermy industry as a whole. Although there is not much circuit court precedent addressing that requirement, we conclude that the state's process is adequate and appropriate.  Illinois owns and has title to all wild birds and mammals, and the state enacted the Code "to protect and regulate the hunting and capture of certain species." 520 ILCS 5/2.1; *see People v. Taylor*, 561 N.E.2d 667, 672 (Ill. 1990). Section 3.21 in particular "ensure[s] that protected animals are taken in compliance with the other provisions of the Code." *Taylor*, 561 N.E.2d at 672. Accordingly, the need to protect wildlife demonstrates that Illinois has a substantial interest in regulating the taxidermy industry. *See United States v. Gonsalves*, 435 F.3d 64, 67-68 (1st Cir. 2006) (substantial interest in regulation of medical drugs); *Contreras*, 119 F.3d at 1290 (food safety); *United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572, 576 (9th Cir. 1996) (veterinary drugs); *Lesser*, 34 F.3d at 1306-08 (sale of rabbits); *Tart v. Massachusetts*, 949 F.2d 490, 498, 501 (1st Cir. 1991) (fishing industry).

The Association does not dispute that the Code satisfies the second prong of *Burger*, whether the warrantless nature of the search is necessary to further the regulatory scheme. And any challenge to that prong would be meritless because abundant case law extols the necessity of surprise in these searches. *Burger*, 482 U.S. at 710; *Gonsalves*, 435 F.3d at 68; *Argent*, 93 F.3d at 576; *Lesser*, 34 F.3d at 1308.

Regarding the third prong, the Association first asserts that the Code's scope is too broad because it does not define the "taxidermy records" subject to inspection, and thus provides insufficient notice to taxidermists that the tags attached to animals are subject to search. The Association concedes that "taxidermy records" include the written records kept by taxidermists, but contends that the term cannot possibly include the tags attached to the animals. The Association notes the Code's requirement that taxidermists keep "records" for at least two years or however long the taxidermist possesses the animal or its parts, 520 ILCS 5/3.21(d), and points out the absurdity of any obligation to keep a tagged specimen after a taxidermist no longer has the specimen in his shop.

An examination of section 3.21(d) in the context of the entire Code, however, refutes the Association's narrow argument. As the district court noted, if the Illinois legislature intended to limit "taxidermy records" only to written records, it would have explicitly said so. *See People v. Santiago*, 925 N.E.2d 1122, 1130 (Ill. 2010). Further, the Association's interpretation would render superfluous the phrase "taxidermy records," used only in section 3.21(d). *See People v. Maggette*, 747 N.E.2d 339, 347 (Ill. 2001). The Association's interpretation also would be inconsistent with the statute's organization. The requirements of written records and animal tags are set out in two different sections of the Code, sections 3.21(b) and (c), and are followed by the section authorizing inspection of taxidermy records, section 3.21(d). This arrangement suggests that section (d) encompasses both the written records and the tags. *See Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2008); *People v. Robinson*, 902 N.E.2d 622, 627 (Ill. 2008). Moreover, removing the tagging requirement from the breadth of inspections also would frustrate the purpose of the Code: regulating the capture and possession of wildlife. *See United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006); *In re Hardin*, 932 N.E.2d 1016, 1020 (Ill. 2010). Allowing inspectors to search the tags enables them to verify the accuracy of a taxidermist's written records and ensure compliance with the Code.

The Association's other argument with regard to the third prong is that the statute gives inspectors too much discretion because "any peace officer" may conduct the search. Circuit courts have approved regulations that place greater restrictions on who can conduct an inspection. *Gonsalves*, 435 F.3d at 68 (certain employees of the health department); *Lesser*, 34 F.3d at 1308 (officials of the Animal and Plant Health Inspection Service). But courts also have approved regulations permitting an equally wide latitude of inspectors. *Burger*, 482 U.S.

at 704, 711 (agent of the Commissioner or any police officer); *Contreras*, 119 F.3d at 1291 (food sanitarians from several departments); *Tart*, 949 F.2d at 497 ("any authorized person"). Thus, the Code's grant of authority to any peace officer, though broad, is reasonable. Moreover, section 3.21(d) limits inspections to "any reasonable hour," and section 1.19 limits inspections to commercial property. Taken as a whole, then, the Code provides a constitutionally adequate substitute for a warrant and satisfies the third *Burger* prong.

Accordingly, we AFFIRM the judgment.