# Illinois Official Reports

## Appellate Court

***People v. Collier*, 2020 IL App (1st) 162519**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL COLLIER, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-2519 |
| Filed | February 3, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-4042; the Hon. William H. Hooks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Richard Connor Morley, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Retha Stotts, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion.<br>Justices Hyman and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Samuel Collier, was charged with and convicted of theft and cruel treatment to animals. He appeals his convictions, arguing that the State failed to prove him guilty beyond a reasonable doubt, that his indictment was defective, and that the animal cruelty statute is unconstitutional. We affirm.

¶ 2                                    BACKGROUND

¶ 3    Chicago police officers were tasked with investigating reports of animal abuse at 217 North Lorel Street in Chicago. Officer Joseph Chausse, who was assigned to the case, visited the residence three times during a week in February 2015. On one of the days, the temperature outside was 15 degrees, and Officer Chausse observed a dog chained to a pole outside. On another visit, Officer Chausse saw the same dog chained outside on a cold day and then saw defendant bring the dog inside. The dog matched the description of a dog that had been stolen in the neighborhood.

¶ 4    Officer Chausse obtained a search warrant for the property at 217 North Lorel Street, and officers executed the warrant on February 18, 2015. When the officers gained entry into the residence, they were overcome by the strong odor of urine and feces. Officer Chausse stated that the residence was cold, with no real discernable difference from the outside temperature. Officer Chausse also indicated that the house had no running water and was in "all kinds of disarray."

¶ 5    After going through the residence, the officers found a total of four dogs. The dogs were recovered from rooms that contained piles of feces, including a second-floor bathtub that was filled with feces. One of the rooms housing a female bulldog had a pile of feces that had been swept into the corner. The whole place reeked of urine. Two of the dogs were in cages, and two were not. The dogs were being kept in rooms that did not have food or water, and Officer Chausse believed that a couple of the dogs appeared to be skinny.

¶ 6    In one of the second-floor rooms, Officer Chausse found a bulldog that was primarily black. The dog was subsequently confirmed to be Romeo, a dog owned by Kenneth Olivo that had been stolen from his backyard. When Romeo was returned to Olivo, Olivo noticed that portions of Romeo's body had been painted black, but that the paint was beginning to peel off around the dog's lips. Despite the paint, Olivo was able to identify the dog as his by other distinct markings.

¶ 7    After going through the house and observing the conditions, Officer Chausse arrested defendant and interviewed him. Defendant admitted that he knew one of the dogs was stolen and was painted to alter his appearance, but that he did not steal the dog. Defendant told Officer Chausse that he was breeding the dogs. As it turned out, one of the dogs was pregnant. Defendant told the officers that he was living in Naperville, but that he came back to the North Lorel Street residence to check on the dogs. The police officers contacted animal control, and an animal control officer came to the residence and took custody of the dogs.

¶ 8    Arthur Ayala, an employee for the City of Chicago Animal Control, removed the dogs from the residence because of the temperature in the house, because the dogs did not have proper access to food and water, and because of the feces littering the residence. A veterinarian evaluated the dogs and, for the most part, found the dogs to be in good condition.

¶ 9        Defendant went to trial for theft and cruel treatment to animals. After a bench trial, the trial judge found him guilty of one count of theft and four counts of cruel treatment to animals. Defendant had previously been convicted for cruel treatment to animals, so these subsequent convictions became felony convictions. Defendant was sentenced to two years in prison. He now appeals.

¶ 10                                                ANALYSIS

¶ 11        Defendant argues that the evidence introduced at trial was insufficient to prove his guilt for cruel treatment to animals. Defendant contends that the only evidence supporting his convictions was photographs of a house in "less-than-ideal" condition but that all the dogs were found to be in good health, so the condition of the house alone did not prove that the dogs were being treated cruelly.

¶ 12        When a defendant challenges the sufficiency of the evidence, we must decide whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Jones*, 219 Ill. 2d 1, 33 (2006). A reviewing court will not substitute its judgment for that of the trier of fact and will not reverse a conviction for insufficient evidence unless the evidence admitted is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of defendant's guilt. *Id.* It is not the reviewing court's function to retry the defendant. *People v. Ware*, 2019 IL App (1st) 160989, ¶ 45. The trier of fact assesses the credibility of the witnesses, determines the appropriate weight of the testimony, and resolves conflicts or inconsistencies in the evidence. *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 21. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Ware*, 2019 IL App (1st) 160989, ¶ 45.

¶ 13        The Humane Care for Animals Act (510 ILCS 70/1 *et seq.* (West 2014)) makes it a crime to treat animals cruelly. The Humane Care for Animals Act provides that "[n]o person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal." *Id.* § 3.01. Defendant argues that the evidence did not prove that he violated this statute.

¶ 14        Defendant's characterization of the evidence is that because the animals did not require medical treatment, the evidence was insufficient to demonstrate that the dogs were cruelly treated. Defendant contends that the only reliable evidence that the dogs were treated badly was the presence of feces and urine in the residence but that such evidence is insufficient to prove a defendant guilty of cruel treatment to animals.

¶ 15        Despite defendant's protestations to the contrary, there was more than just the presence of feces and urine to demonstrate that the dogs were treated cruelly such as to constitute a violation of the statute, though that evidence alone was compelling. The State also introduced evidence to show that defendant was keeping at least one of the dogs chained up outside in 15-degree weather. Officer Chausse testified that the temperature inside the house was not materially different than the temperature outside despite that it was February in Chicago, and the house had no running water.

¶ 16        There was evidence introduced at trial that defendant underfed the dogs, including a dog that was pregnant. Defendant kept two of the dogs in cages that were littered with feces and urine-soaked bedding. One dog had alopecia that was not treated, and another dog had an ear infection that was not treated. While there was evidence that there was a bowl of dog food in the house, there was no evidence that the dogs had immediate access to that food. There was

no food found in the rooms in which the dogs were kept. The police officer and the animal control worker who testified both stated their belief that the dogs were underfed. The only evidence that there was any water for the dogs was a photograph of a bowl filled with a brown liquid that was apparently frozen. Otherwise, Officer Chausse testified that he did not observe that the dogs had any access to water.

¶ 17    The house itself was demonstrated to be in such poor condition that keeping four dogs there could be considered inhumane. The house did not have running water or heat. It was littered with trash, urine, and feces. The feces had been swept into a pile in the corner of one room and a bathtub in the residence was filled with feces. The large amount of animal waste created an overpowering smell that the officers detected as soon as they entered the residence. Defendant admitted that he did not live there with the dogs but that he instead lived with his girlfriend in another city. Defendant's knowledge of the mistreatment was demonstrated by, among other things, the fact that a pile of feces was swept into a corner of the upstairs bedroom and another pile was deposited into the bathtub.

¶ 18    Similar cases in other jurisdictions have led to convictions for cruelty to animals. See, *e.g.*, *Commonwealth v. Erickson*, 905 N.E.2d 127, 132 (Mass. App. Ct. 2009) (sufficient evidence to convict for animal cruelty where the animals were found lying in their own excrement in a stench-filled apartment littered with trash and an overflowing litterbox with questionable access to food and water); *State v. Johnson*, No. W2001-01272-CCA-R3CD, 2002 WL 1426547, at *19 (Tenn. Crim. App. June 26, 2002) (unsanitary conditions like feces accumulating throughout the facility, little availability of food and water, and animals kept in crowded conditions found to be sufficient for convictions for animal cruelty); *State ex rel. Gregan v. Koczur*, 947 A.2d 282, 290-91 (Conn. 2008) (conviction for animal cruelty upheld where the residence was in a deplorable, filthy, unsanitary, and unhealthy condition with cat feces, vomit, and urine present throughout).

¶ 19    Further, defendant knew that one of the dogs was stolen. There was evidence introduced at trial that defendant painted the dog to conceal the dog's identity. The trial judge found defendant guilty of theft on the basis that defendant knew that the dog was stolen. Defendant nonetheless kept all of the dogs and was attempting to breed them with the hope of making money.

¶ 20    Overall, the trial judge found that the dogs were kept in "horrific" conditions, finding the house to be "absolutely filthy." The trial judge noted that the dogs were forced to live in squalor and left alone in the house for much of the time without anyone to take care of them. When the evidence is viewed in a light most favorable to the State, the poor conditions in which the dogs were kept, along with the condition of the dogs and the premises, were sufficient to prove that the dogs were abused or treated cruelly under the statute. We cannot say that no reasonable fact finder could reach the conclusions that the trial court did, nor can we say that the evidence was so lacking that it created a reasonable doubt about defendant's guilt.

¶ 21    Defendant argues that the charging instrument was not sufficiently specific so he could not ascertain the wrongful conduct he was being accused of committing and could not adequately prepare a defense. Defendant further argues that because of what he perceives to be a lack of specificity in the charging document, he is insufficiently protected from being prosecuted again for the same conduct in violation of the double jeopardy clause.

¶ 22    Due process requires that a charging instrument adequately notify a defendant of the offense charged with sufficient specificity to enable a proper defense. *People v. Espinoza*, 2015

IL 118218, ¶ 38. As defendant acknowledges, when an indictment or information is attacked for the first time on appeal, it is sufficient that the indictment or information apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and to allow a defendant to plead a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Davis*, 205 Ill. 2d 349, 375-76 (2002). When a defendant challenges the specificity or otherwise challenges the sufficiency of a charging instrument, our review is *de novo*. *People v. Rowell*, 229 Ill. 2d 82, 92 (2008).

¶ 23     Defendant fails to demonstrate that he lacked adequate notice of the conduct for which he was called to answer. The indictment specifically cited the statute prohibiting the cruel treatment of animals (510 ILCS 70/3.01 (West 2014)) and tracked the statute's language to allege that defendant committed the offense of cruelty to animals. An indictment that charges an offense in the language of the statute is sufficient if the words of the statute particularize the offense so that an accused is apprised, with reasonable certainty, of the precise offense. *People v. Banks*, 75 Ill. 2d 383, 392 (1979). Here, the language of the indictment specifically tracked the language of the statute and the language of the statute particularizes the offense such that defendant had adequate notice to enable a proper defense. The language used in the indictment is not so broad as to leave defendant unaware of what the State intended to prove at trial.

¶ 24     In addition to the indictment tracking the language of the statute, the indictment set forth the date of the alleged offense, February 18, 2015—the date that the search warrant was executed and on which defendant was arrested. Defendant was at the residence on the day that the search warrant was executed, and defendant was specifically questioned about his treatment of the animals. The indictment described the dogs individually by gender and breed and notified defendant that the State was intending to prove that he cruelly treated or otherwise abused those specific dogs. Defendant was clearly on notice of the conduct for which he was called to answer at trial.

¶ 25     Moreover, defendant has not made any persuasive or specific argument that his ability to defend the case was prejudiced by any lack of specificity in the indictment as is required when a defendant challenges the specificity of a charging instrument for the first time on appeal. See *Davis*, 205 Ill. 2d at 376. The record demonstrates that defendant was given, in discovery, all of the evidence that the State intended to use to prove the violation of the statute it set forth in the indictment. There were pretrial proceedings, like a forfeiture proceeding, where the State outlined its case with testimony from Officer Chausse that the dogs were being kept in unreasonably poor conditions. Defendant was also present when the search warrant was executed, and he was personally questioned about the condition of the dogs and the premises.

¶ 26     As for defendant's argument regarding the indictment and its connection to the potential for subsequent prosecutions, the indictment contains time and place information and enough information about the prohibited conduct that he could plead his conviction as a bar to future prosecution for the same conduct. Defendant contends that he "would have had no recourse if the State recharged him with cruel treatment to animals" for discrete acts giving rise to his convictions. But the indictment sets forth the date and location of the conduct that comprise the offenses and the identity of the animals.

¶ 27     Generally, when an indictment provides a description of the offending conduct and provides the time and place of the alleged conduct, the indictment provides ample protection against the risk of multiple prosecutions for the same crime. *United States v. Resendiz-Ponce*,

549 U.S. 102, 107-08 (2007). In addition, when defending against a subsequent prosecution on the grounds of double jeopardy, a defendant is not confined to reliance upon the former indictment alone but may also resort to the record of the original conviction. *People v. Parsons*, 284 Ill. App. 3d 1049, 1057 (1996) (citing *People v. Pujoue*, 61 Ill. 2d 335 (1975)). The record in this case resolves any doubt regarding the conduct for which defendant was found to be culpable at trial. The record would provide defendant ample documentation to plead and to protect himself from any future prosecution for the same conduct for which he was prosecuted in this case.

¶ 28     Defendant argues that the cruel treatment to animals statute violates due process because it is unconstitutionally vague in that it potentially criminalizes innocent conduct and does not contain an explicit *mens rea* or motive requirement. Again, the statute at issue provides that "[n]o person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal." 510 ILCS 70/3.01 (West 2014).

¶ 29     Due process requires that the proscriptions of a criminal statute be clearly defined. *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 24. To satisfy this requirement, a criminal statute must (1) be sufficiently definite so that it gives persons of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct and (2) be sufficiently definite to prevent arbitrary and discriminatory enforcement. *Id.* Where, as here, a penal statute that does not involve first amendment freedoms is challenged as unconstitutionally vague on its face, courts will invalidate the statute only if no standard of conduct is specified at all. *People v. Taylor*, 138 Ill. 2d 204, 211 (1990). Thus, the party challenging a statute's facial constitutionality must show that the statute is impermissibly vague in all of its applications. *Id.*

¶ 30     Statutes are presumed to not violate the constitution, so a party challenging a statute must establish clearly that it violates the constitution. *People v. Pepitone*, 2018 IL 122034, ¶ 12. That burden is particularly heavy where, as here, the party raises a facial challenge, asserting that there is no circumstance in which the statute is valid. *Id.* Our courts are required to construe a statute in a manner to uphold its constitutionality whenever reasonably possible and to resolve any doubts in favor of its validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6 (2010). We review the constitutionality of a statute *de novo*. *People v. Devenny*, 199 Ill. 2d 398, 400 (2002).

¶ 31     Defendant argues that the Humane Care for Animals Act encompasses even well-intended or accidental harms to animals. Defendant posits that the statute punishes "any conduct that results in cruel treatment or abuse of an animal, regardless of whether the cruelty or abuse was intentional, knowing, reckless, or negligent." Thus, defendant claims, the statute potentially criminalizes innocent conduct and is unconstitutional. In this case, as in *Taylor*, "we believe that the statute before us defines the criminal offense with sufficient certainty that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Taylor*, 138 Ill. 2d at 212; see also *People v. Dednam*, 55 Ill. 2d 565, 568-69 (1973).

¶ 32     The statute at issue does not capture *innocent* conduct, it only captures conduct that can be defined as cruel or abusive. It would be unreasonable to conclude that cruel or abusive conduct toward an animal can be considered innocent conduct. Ordinary people can understand from the language used in the statute what conduct is prohibited. And the statute gives police officers, prosecutors, and most importantly judges and jurors, sufficient instruction so that the statute will not be enforced arbitrarily or in a discriminatory manner. A reasonable person who

kept animals in the way that defendant did here would know that it was against the law. The statutory section at issue has been in effect since 1986, and as defendant acknowledges, the purported vagueness of the statute has never been challenged. Defendant's professed concerns about the statute potentially criminalizing innocent conduct have not materialized.

¶ 33    Addressing a vagueness challenge to a similar statute, the aggravated cruelty to an animal statute, we found that the statute was sufficiently definite to inform reasonable persons of the conduct that was prohibited. See *People v. Larson*, 379 Ill. App. 3d 642, 650-51 (2008). In *Larson*, we recognized that impossible standards of specificity are not required for a statute to pass constitutional muster. *Id.* at 651. We further recognized that, under the statute being examined in that case, the application of the ordinary and popular meaning of the statutory language and recognition of the evil the statute intends to prevent provided adequate notice of the prohibited conduct and prevented arbitrary enforcement. *Id.* at 652; see also *State v. Webb*, 130 S.W.3d 799, 828 (Tenn. Crim. App. 2003) (analyzing Tennessee's animal cruelty statute in the context of a vagueness challenge and examining statutes from other jurisdictions). The same is true in this case.

¶ 34    In addition, a preceding section of the Humane Care for Animals Act, section 3, sets forth the minimum provisions that an owner must furnish to his animals. "Each owner shall provide for each of his or her animals: (a) a sufficient quantity of good quality, wholesome food and water; (b) adequate shelter and protection from the weather; (c) veterinary care when needed to prevent suffering; and (d) humane care and treatment." 510 ILCS 70/3 (West 2014). The statute requires an owner to meet the animals' basic needs, and it criminalizes the failure to meet those needs in addition to outright abuse and torture. Regardless of whether defendant's challenge is a facial challenge or an as-applied challenge, the statute does not have the potential to criminalize innocent conduct as defendant suggests.

¶ 35    Defendant also argues that the statute violates due process because it does not include a *mens rea* or motive requirement thereby making the cruelty to an animal a strict liability offense. Defendant opines that the legislative history of the statute indicates that the General Assembly "*meant* to target cruelty to animals that was the result of either intentionally malicious acts or at the very least recklessness or negligence" but that the statute actually "sweeps more broadly than that." Defendant argues that, without having an expressly stated mental state, the statute is unconstitutional.

¶ 36    However, the General Assembly's failure to expressly include a mental state in a criminal statute does not mean that there is no mental state. Instead, where a criminal statute does not specify a mental state, then a mental state of either intent, knowledge, or recklessness is implied. 720 ILCS 5/4-3(b) (West 2014); *People v. Sevilla*, 132 Ill. 2d 113, 123 (1989); *People v. Witherspoon*, 2019 IL 123092, ¶ 29. If a statute instead represents a strict liability offense, the statute must "clearly indicate[ ] a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4-9 (West 2014).

¶ 37    The State advocates for the implication of the "knowledge" mental state, and at oral argument, defendant acknowledged that one of the three should be read into the statute. We conclude that the statute requires knowledge to convict. A defendant must knowingly cruelly treat or otherwise abuse an animal to be convicted. It is not a strict liability offense but instead requires the culpable, knowing mistreatment of animals. See *id.* § 4-5.

¶ 38    Defendant fails to argue that he did not act knowingly. The evidence introduced at trial was sufficient for a rational trier of fact to find that he did, in fact, act knowingly. Reviewing section

3.01 of the Humane Care for Animals Act under the dictates that we uphold the constitutionality of a statute whenever reasonably possible and resolve any doubts in favor of its validity, we find that defendant has not clearly established that the statute violates his constitutional rights nor has he met the heavy burden of demonstrating that there is no circumstance in which the statute can be validly applied.

¶ 39                                    CONCLUSION

¶ 40          Accordingly, we affirm.

¶ 41          Affirmed.